**MITSUBISHI ELECTRIC CORP., Mitsubishi Electronics America, Inc. and Mitsubishi Consumer Electronics America, Inc., and Ericsson GE Mobile Communications, Inc., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**Motorola, Inc., Defendant–Intervenor.**

No. 91–04–00301.

United States Court of International Trade.

Aug. 21, 1992.

Baker & McKenzie, Thomas Peele and Steven F. Fabry, Washington, D.C., for plaintiffs Mitsubishi Elec. Corp., Mitsubishi Electronics America, Inc. and Mitsubishi Consumer Electronics America, Inc.

Sharretts, Paley, Carter & Blauvelt, P.C., Gail T. Cumins and Ned H. Marshak, New York City, for plaintiff Ericsson GE Mobile Communications, Inc.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of

Justice, Michael S. Kane, of counsel, David Richardson, Dept. of Commerce, Washington, D.C., for defendant.

Oppenheimer Wolff & Donnelly, Timothy A. Harr, Washington, D.C., for defendant-intervenor.

## MEMORANDUM OPINION

CARMAN, Judge:

Plaintiffs appeal a scope ruling of the United States Department of Commerce ("Commerce"), International Trade Administration ("ITA"), published at *Notice of Scope Rulings,* 56 Fed.Reg. 36,774 (Aug. 1, 1991) and more fully explained in the ITA's April 16, 1991 letter to interested parties. Administrative Record Document ("A.R.Doc.") 16 ("Scope Ruling"). The Scope Ruling held that certain radio frequency ("RF") power semiconductors manufactured by Plaintiff Mitsubishi Electric Corporation ("Mitsubishi") in Japan and imported into the United States are subassemblies of cellular mobile telephones ("CMTs") within the scope of the antidumping duty order in *Antidumping Duty Order: Cellular Mobile Telephones and Subassemblies from Japan,* 50 Fed.Reg. 51,-724 (Dec. 19, 1985). A.R.Doc. 16 at 4.

Plaintiffs bring this action pursuant to 19 U.S.C. § 1516a(a)(2)(B)(vi) (1988) to contest the determination reached in the Scope Ruling. The case is before the Court on Plaintiffs' motion under Rule 56.1 of the Rules of this Court for judgment upon the agency record. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (1988).

## BACKGROUND

Plaintiffs are Mitsubishi, a Japanese manufacturer and exporter of RF power semiconductors; its two related United States importers, Mitsubishi Electronics America, Inc. and Mitsubishi Consumer Electronics America, Inc.; and an unrelated United States importer, Ericsson GE Mobile Communications, Inc. ("EGE").

The merchandise at issue consists of RF power semiconductors which are thick-film power amplifiers (A.R.Doc. 3 at 5) that operate at various frequency ranges, which are defined in MegaHertz ("MHz"). Plaintiffs' RF power semiconductors operate effectively in the range of 810–860 MHz. A.R.Doc. 11 at 2.

The underlying antidumping duty investigation found that subassemblies of cellular mobile telephones ("CMTs") include power amplifying devices.[1] The Preliminary Determination defined subassemblies covered by the investigation in the following terms:

> Examples of such subassemblies are circuit boards and/or modules containing any of the following circuitry or combinations thereof: audio processing, signal processing (logic), RF, IF, synthesizer, duplexer, power supply, power amplification, transmitter, and exciter.

*Id.* at 24,554–55.

The definition of subassemblies assumed its present form in the final determination. *See Cellular Mobile Telephones and Subassemblies from Japan; Final Determination of Sales at Less Than Fair Value,* 50 Fed.Reg. 45,447 (Oct. 31, 1985) ("Final Determination"). The Final Determination adopted the findings and reasoning of the Preliminary Determination but, rather than attempt to formulate a technical and descriptive definition of subassemblies, it established a standard based on the dollar value of the subassemblies in question:

> Subassemblies are any completed or partially completed circuit modules, the value of which is equal to or greater than five dollars, and which are dedicated exclusively for use in CMT transceivers or control units. The term "dedicated exclusively for use" only encompasses those subassemblies that are specifically designed for use in CMTs, and could not be used, absent alteration, in a non-CMT

---

1. The inclusion of subassemblies in the preliminary antidumping duty investigation resulted from Commerce's determination that a failure to include them would result in an order that "could easily be circumvented." *Cellular Mobile Telephones and Subassemblies from Japan; Pre-* *liminary Determination of Sales at Less Than Fair Value,* 50 Fed.Reg. 24,554, 24,555 (June 11, 1985). Commerce also addressed the issue of the inclusion within the scope of the investigation of subassemblies that are imported separately, as opposed to those imported in kits. *Id.*

device.... Examples of subassemblies which may fall within this definition are circuit modules containing any of the following circuitry or combinations thereof: audio processing, signal processing (logic), RF, IF, synthesizer, duplexer, power supply, power amplification, transmitter, and exciter.

*Id.* at 45,448.

After the International Trade Commission ("ITC") issued its final affirmative injury determination, Commerce published the antidumping duty order. *Antidumping Duty Order: Cellular Mobile Telephones and Subassemblies from Japan,* 50 Fed.Reg. 51,724 (Dec. 19, 1985) ("Order").

The Final Determination was then challenged on the ground, *inter alia,* of whether or not the ITA's determination to include discrete CMT subassemblies within the scope of the investigation was supported by substantial evidence on the record and otherwise in accordance with law. *See Mitsubishi Elec. Corp. v. United States,* 12 CIT 1025, 1041, 700 F.Supp. 538, 551 (1988), *aff'd,* 8 Fed.Cir. (T) ——, 898 F.2d 1577 (1990). The challenge focused on the inclusion of insignificant, discrete subassemblies (*i.e.,* subassemblies that are imported separately rather than in kits) within the scope of the Order. The Court of International Trade upheld the ITA's determination that discrete subassemblies are within the scope of the Order and the Court of Appeals for the Federal Circuit affirmed.

In December 1989 Motorola, Inc. ("Motorola"), Defendant–Intervenor in this action and petitioner in the underlying administrative action, requested that Commerce conduct an administrative review of the Order for the period December 1, 1988 through November 30, 1989. A.R.Doc. 1 at 2. In its request for the review, Motorola alleged that Mitsubishi and its subsidiaries were importing CMT subassembly "kits" in violation of the Order. *Id.*

Commerce initiated the administrative review and sent questionnaires to Mitsubishi. In its response to Commerce's questionnaires, Mitsubishi claimed that it made no sales or shipments of any merchandise that is subject to the Order during the review period. *Id.* Mitsubishi's response included a list of items that it and its related entities had imported for use in the manufacture of CMTs. *Id.* at 4. The list included RF power semiconductors, the merchandise at issue in this action. Several exchanges of questionnaires and responses concerning the RF power semiconductors followed. A.R.Doc. 4 (Letter from ITA to Mitsubishi); A.R.Doc. 5 (Letter from Mitsubishi to ITA); A.R.Doc. 6 (Letter from Mitsubishi to ITA); A.R.Doc. 7 (Letter from Mitsubishi to ITA). Commerce then decided to self-initiate a scope inquiry, pursuant to 19 C.F.R. § 353.-29(a) (1990) to determine whether or not the RF power semiconductors are subject to the Order. A.R.Doc. 8 (Letter from ITA).

The scope inquiry focused on two issues: 1) whether or not power semiconductors are subassemblies within the meaning of the Order; and 2) whether or not the RF power semiconductors in question are "dedicated exclusively for use in CMTs." In the course of the inquiry, Mitsubishi asserted that its RF power semiconductors are not subject to the Order because the Order applies to subassemblies only to the extent that they cannot be used, absent alteration, in the manufacturing of non-CMT devices. A.R.Doc. 11 at 9, 11 (Letter from Mitsubishi to ITA); A.R.Doc. 7 (Letter from Mitsubishi to ITA). Plaintiffs presented evidence to show that their RF power semiconductors are used in the manufacture of non-CMT devices in foreign countries which are sold and used in the United States. *Id.* at 8; A.R.Doc. 19 at 3 (Letter from Mitsubishi to ITA). Plaintiffs also asserted that the RF power semiconductors are not subassemblies because they do not conform to the definitions of subassemblies contained in the Order and in various technical reference materials. A.R.Doc. 11 (Letter from Mitsubishi to ITA); A.R.Doc. 10 at 8 (Letter from EGE to ITA); *see* A.R.Doc. 9 (Letter from NEC Corp. and NEC America to ITA). On April 16, 1991, Commerce issued the Scope Ruling which held that the RF power semiconductors in question do fall within the scope of the Order. *Notice*

*of Scope Rulings,* 56 Fed.Reg. 36,774 (Aug. 1, 1991); A.R.Doc. 16.

On April 23, 1991, Plaintiffs commenced the present action contesting that Scope Ruling. Specifically, Plaintiffs contest two issues. First, they argue that Commerce's Scope Ruling is unsupported by substantial evidence and not in accordance with law because the ITA disregarded evidence of actual and potential uses of the RF power semiconductors in non-CMT devices and unlawfully expanded the scope of the criteria as set forth in the Order. Second, Plaintiffs argue that Commerce's finding that the RF power semiconductors at issue here are circuit module subassemblies, notwithstanding the fact that the RF power semiconductors are complete and unitary devices not capable of disassembly or repair in the field, is unsupported by substantial evidence and not in accordance with law.

## STANDARD OF REVIEW

■ In actions challenging a determination as to whether a particular type of merchandise is covered in an existing antidumping duty order, 19 U.S.C. § 1516a(a)(2)(B)(vi), this Court must decide whether the challenged determination is supported by substantial evidence on the record and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). The United States Supreme Court has explained that "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *accord Matsushita Elec. Indus. Co. v. United States,* 3 Fed.Cir. (T) 44, 51, 750 F.2d 927, 933 (1984); *J.C. Hallman Mfg. Co. v. United States,* 13 CIT 1073, 1075, 728 F.Supp. 751, 753 (1989).

## DISCUSSION

**A.** *Whether the Scope Ruling Unlawfully Expands the Antidumping Duty Order*

The first issue before the Court is whether the Scope Ruling is an unlawful expansion of the Order or merely a lawful clarification of its terms.

■ It is well established, and undisputed here, that the ITA has the authority to clarify the scope of its antidumping duty orders. *See Diversified Products Corp. v. United States,* 6 CIT 155, 159, 572 F.Supp. 883, 887 (1983). Commerce, however, may not expand the scope of such orders beyond the merchandise encompassed by the final less than fair value determinations. *See, e.g., Royal Business Machines, Inc. v. United States,* 1 CIT 80, 86–87, 507 F.Supp. 1007, 1013–14 (1980), *aff'd,* 69 CCPA 61, 669 F.2d 692 (1982). This rule was recently followed by the circuit court in *Smith Corona Corp. v. United States,* 8 Fed.Cir. (T) ——, ——, 915 F.2d 683, 686 (1990), where the court stated that "[a]lthough the scope of a final order may be clarified, it cannot be changed in a way contrary to its terms." The Court in *UST, Inc. v. United States,* 9 CIT 352, 356, 1985 WL 25772 (1985), reiterated this rule in stating that "while Commerce may interpert [sic] the scope of a finding, it cannot alter or amend that scope. Each stage of the statutory proceeding maintains the scope passed on from the previous stage."

The terms of the Order establish three criteria to define subassemblies within its scope. They are:

1) completed or partially completed circuit modules,

2) the value of which is equal to or greater than five dollars, and

3) which are dedicated exclusively for use in CMT transceivers or control units.

*Order,* 50 Fed.Reg. at 51,725. The third criterion is defined as encompassing only "those subassemblies that are specifically designed for use in CMTs, and could not be used, absent alteration, in a non-CMT device." *Id.*

The challenged Scope Ruling, however, applies the Order to "imported subassemblies *used solely for CMT production in the United States.*" Scope Ruling, A.R.Doc. 16 at 4 (emphasis added). The ITA included the subject merchandise within the scope of the Order on the ground,

*inter alia,* that they "continue to be used in the United States exclusively in CMTs and are designed for the specified frequencies reserved by the Federal Communications Commission for cellular telephone applications." *Id.*

At the center of this controversy are the conflicting interpretations that each of the parties gives to the "dedicated exclusively for use in CMT transceivers or control units" criterion established by the Order. The conflict between the Plaintiffs' and Defendant's interpretations of the "dedicated exclusively for use" standard amounts to the differences between (i) the requirement that RF power semiconductors have potential non-CMT uses (Plaintiffs' position), and (ii) the requirement that RF power semiconductors actually be used in the production of non-CMT devices in the United States (Defendant's position).

Plaintiffs claim that the evidence in the record demonstrates that the RF power semiconductor at issue in this case does not meet the "dedicated exclusively for use" standard. Therefore, Plaintiffs maintain that the merchandise does not fall within the scope of the Order.

Defendant contends that the Scope Ruling did nothing more than "clarify the test in order to eliminate an interpretation that would nullify those portions of the Order and Final Determination relating to subassemblies." Def. Brief at 19. Defendants argue that the "dedicated exclusively for use" standard is applicable to RF power semiconductors on the ground that "[t]here

is no evidence in the administrative record that a Mitsubishi power ... [semiconductor] imported into the United States has ever been incorporated into a non-CMT device." *Id.* at 18.

Specifically, Plaintiffs argue that the "dedicated exclusively for use" standard only encompasses subassemblies that "could" not be used, absent alteration, in a non-CMT device; therefore it follows that the existence of potential non-CMT uses for a particular subassembly would exclude it from the scope of the Order. Plaintiffs contend that the Scope Ruling defines the Order as encompassing subassemblies that have no actual non-CMT use. In other words, the language of the Scope Ruling creates an "is actually used in non-CMT devices" criterion, whereas the Order contains a "could be used in non-CMT devices" criterion. As a result, Plaintiffs contend, the Scope Ruling expands the Order to include subassemblies that have only actual non-CMT uses. Moreover, according to Plaintiffs, Commerce had to make no less than three substantive additions to the actual scope definition found in the CMTs Order to evade the correct result and force the result it wanted to reach. This, Plaintiffs allege, led to an impermissible expansion of the scope of the Order, contrary to law.

Plaintiffs argue that the evidence they presented in the course of the scope inquiry establishes the existence of both potential and actual non-CMT uses of the RF power semiconductor.[2] The non-CMT uses in-

2. Plaintiffs evidence includes:

1) Sample of non-CMT device (land-mobile telephone) sold and used in the United States, which incorporates the subject RF power semiconductor without alteration at non-CMT frequencies. Conf.Doc. 7.

2) Correspondence between Mitsubishi and a customer concerning the customer's inquiry whether the subject RF power semiconductor could be used in U.S. land-mobile telephones operating at non-CMT frequencies. A.R.Doc. 11, Conf.Doc. 6; Exh. 3.

3) Internal Mitsubishi engineering test report confirming that the RF power semiconductor could be used in U.S. land-mobile telephones operating at non-CMT frequencies. A.R.Doc. 11, Conf.Doc. 6; Exh. 3.

4) Customer specifications for the RF power semiconductor for use in a non-CMT device

(land-mobile telephone) sold and used in the United States, stating that the RF power semiconductors are to be used in land-mobile telephones in the United States and will operate at non-CMT frequencies. A.R.Doc. 11, Conf.Doc. 6; Exh. 1.

5) United States Federal Communications Commission grant of authorization for a non-broadcaster transmitter sold and used in the United States, dated September 12, 1988. A.R.Doc. 7, Conf.Doc. 5, Attachment.

6) Copy of some of the U.S. advertising materials for the non-CMT device sold and used in the United States. A.R.Doc. 7, Conf.Doc. 5, Attachment.

7) Sample of invoice from Mitsubishi's customer to U.S. sales company for a sale of the non-CMT device sold and used in the United States. A.R.Doc. 7 at 8, Conf.Doc. 5.

clude incorporation. into land-mobile telephones that are manufactured in a foreign country and subsequently imported into, sold, and used in the United States. Therefore, Plaintiffs argue, the RF power semiconductors are not dedicated exclusively for use in CMTs as that standard is defined by the Order.

The Court notes that in the course of oral argument Defendant conceded that "[t]he standard that was articulated in the original order [and] the standard that Commerce adheres to ... is potential use." Transcript of Hearing 45, 47. Defendant maintains, however, that the absence of evidence showing "use in the United States gives a very strong inference that there is no potential use in a non-CMT device." *Id.* at 47.

▆ The Order states that "[t]he presumption is that CMT subassemblies are covered by the order unless an importer can prove otherwise." *Order,* 50 Fed.Reg. at 51,725. The Court finds that the evidence presented by Plaintiffs was ample to establish that Plaintiffs' RF power semiconductors have both potential and actual non-CMT uses. Therefore the Court finds that Commerce's determination, that RF power semiconductors are within the scope of the Order because they are "dedicated

exclusively for use" in CMTs, as that standard is defined by the Order, is not supported by substantial evidence on the record.

The Court also finds that the Scope Ruling expands the scope of the Order and that this expansion is not in accordance with law. In making this finding, the Court notes that Commerce has taken the position that "CMT subassemblies that are 'dedicated exclusively for use' in CMTs are the same 'class or kind' of merchandise as complete CMTs." *Final Determination,* 50 Fed.Reg. at 45,448. Furthermore, in reviewing the various notices and determinations published by Commerce in the context of this investigation, the Court notes some ambiguity as to whether subassemblies such as those at issue here are within the scope of the Order. Specifically, Commerce has said that "[w]hile some CMT components may be purchased by CMT manufacturers from unrelated parties, the Department has reason to believe that such separately traded items may not meet the 'dedicated exclusively for use' criteria, and therefore would not be covered by the scope of any order." *Id.* Because EGE is not related to Mitsubishi or its affiliated distributors in this country and because it

8) Mitsubishi's computerized confirmation list, showing sales of its RF power semiconductors to distributor that sells the semiconductors to the manufacturer of the non-CMT devices sold and used in the United States, with purchase order sheets showing distributor's sales to the manufacturer of the non-CMT device. A.R.Doc. 6, Conf.Doc. 4, Attachment.

9) Customer specifications for the RF power semiconductor for use in a non-CMT device (multi-channel access equipment) used outside the United States. A.R.Doc. 11, Conf.Doc. 6, Exh. 1.

10) Order received by Mitsubishi from customer, showing that the RF power semiconductors ordered will be used in multi-channel access equipment at an airport outside the United States. A.R.Doc. 6, Conf.Doc. 4, Attachment (last page).

11) Mitsubishi catalog data chart showing that the RF power semiconductors operate effectively at frequencies outside those reserved for CMTs in the United States. A.R.Doc. 11, Conf.Doc. 6, Exhibit 2.

12) Certified statement under 19 C.F.R. § 353.31(i) that the RF power semiconductors operate effectively at frequencies outside those

reserved for CMTs in the United States. A.R.Doc. 11, Conf.Doc. 6.

13) Certified statement under 19 C.F.R. § 353.31(i) that the RF power semiconductors can be used and have been used, absent alteration, in non-CMT devices. A.R.Doc. 3, Conf. Doc. 2 at 5; A.R.Doc. 5, Conf.Doc. 3 at 2.

14) Sworn statement of Manager of Product Development for Cellular Products for EGE that the RF power semiconductors could be used, absent alteration, in the following non-CMT devices:

(a) NPSPAC public service radios and equipment utilizing frequencies outside those reserved for CMTs in the United States;

(b) SMR mobile radios (*i.e.* land-mobile telephones that utilize frequencies outside those reserved for CMTs in the United States; and

(c) SMR station equipment that utilizes frequencies outside those reserved for CMTs in the United States, with back-up engineering test attached. A.R.Doc. 10, Attachment.

15) Certified statement of EGE under 19 C.F.R. § 353.31(i) that the RF power semiconductor can be used without modification for non-cellular as well as cellular application. A.R.Doc. 10.

is involved in the purchase of separately traded items as opposed to kits containing several CMT subassemblies, the observation quoted above would appear to apply to the RF power semiconductors at issue here.

Following the Court's findings above, with respect to the applicability of the "dedicated exclusively for use" standard to RF power semiconductors and the ambiguity with regards to the application of the Order to subassemblies that are separately traded between unrelated parties, the Court does not find substantial evidence on the record to support the proposition that this product is of the "same class or kind" of merchandise that was included within the scope of the Order.

Plaintiffs further contend that the application of the Order to "imported subassemblies used solely for CMT production in the United States" (Scope Ruling, A.R.Doc. 16 at 4) further expands the Order in two respects. First, it imposes the requirement that non-CMT uses of RF power semiconductors must occur in the United States. Second, it requires that such use must include the production of non-CMT devices.

Despite the alleged unlawful nature of this expansion, Plaintiffs argue that the evidence in the record establishes that non-CMT devices that incorporate Plaintiff's RF power semiconductors are commercially available in the United States. On this ground alone, Plaintiffs argue that "it is absolutely clear that these items were proven to be not dedicated exclusively for use in CMTs." Pl. Reply at 8. To avoid reaching this conclusion, Plaintiffs argue that Commerce created yet another requirement, that non-CMT uses must include the production of non-CMT devices in the United States. By imposing this additional requirement, Plaintiffs maintain that Commerce has no trouble concluding that the non-CMT devices actually using the semiconductors (land mobile telephones) do not establish an alternative non-CMT use because they are manufactured in a third country and subsequently imported into the United States. *See* A.R.Doc. 16 at 2, 4.

Furthermore, Plaintiffs argue that Commerce did not inquire in the questionnaires that it sent to Mitsubishi in the course of the scope inquiry whether or not RF power semiconductors are used in the manufacture of non-CMT devices in the United States. Transcript of Hearing 31–32. Relying on its understanding of the plain language of the Order, Mitsubishi provided what it considered to be substantial evidence to show that its product was not within the scope of the Order. *Id.* at 33.

Defendant argues that Commerce acted within its authority to clarify the scope of an antidumping duty determination and supports its position that these requirements are implicit in the Order because "a determination under the antidumping statute is designed to provide relief to domestic industry in the *United States,* from the effects of goods dumped in the *United States.*" Def.Mem. at 28–29 (emphasis in original).

The Court finds nothing in the language of the Order that requires importers to show use of CMT subassemblies in the production of non-CMT devices in the United States. This result cannot therefore be sustained as a mere clarification of the Order. Therefore the Court finds that the imposition of the requirement that RF power semiconductors must be used in the production of non-CMT devices in the United States expands the scope of the Order and is not supported by substantial evidence on the record and is not in accordance with law.

B. *Whether Plaintiff Mitsubishi's RF Power Semiconductors Are Subassemblies Within the Meaning of the Antidumping Duty Order*

Plaintiffs also challenge the Scope Ruling on the ground that their RF power semiconductors are not "subassemblies" within the meaning of the Order. To support this argument, Plaintiffs assert that RF power semiconductors do not conform to the first of the three criteria established in the Order to define subassemblies within its scope, because they are not completed or partially completed circuit module subas-

semblies. Plaintiffs assert instead that "[a]n RF power semiconductor is an item that may be subassembled to a circuit board, but this does not make it a "subassembly"; it makes the populated or semipopulated circuit board to which it is attached a subassembly." Pl. Mem. at 32–33; *see* A.R.Doc. 10, Attachment (Sworn Statement of Manager of Product Development for Cellular Products for EGE).

Defendant argues that RF power semiconductors are within the scope of the Order "because they performed and compartmentalized 'one or more of the essential functions necessary to a CMT'—*i.e.*, 'the power amplifying function' specifically identified by the Commission." Def.Mem. at 17.

In its determination, Commerce asserts that "[i]n this case, the description of the product contained in the initial investigation and the determinations of the Secretary and Commission were dispositive." A.R.Doc. 16 at 2. In the same paragraph, Commerce cites 19 C.F.R. § 353.29(i) as the provision in the regulations that were followed in this investigation. That provision lists additional factors for consideration, that should be applied in cases in which the description of the product and the determinations of the Secretary and the Commission are not dispositive. They include:

(i) The physical characteristics of the product;

(ii) The expectations of the ultimate purchasers;

(iii) The ultimate use of the product; and

(iv) The channels of trade.

In light of the Court's finding above, that RF power amplifiers do not meet the "dedicated exclusively for use" standard and may not therefore conform to the description of the product contained in the Order, the Court notes that consideration of these additional technical factors would help shed more light on the extent to which RF power semiconductors are subassemblies within the meaning of the Order.

■ Without commenting on the extent to which RF power semiconductors are subassemblies in the technical sense in which that term is used, the Court finds that RF power semiconductors are not subassemblies within the scope of the Order because they do not conform to the third criterion established by the Order, in that they are not "dedicated exclusively for use" in CMTs.

## C. *Factors Which Commerce Considered in the Course of the Investigation*

The Court notes that Defendant, in the course of oral argument, raised concern regarding possible circumvention of the Order. Specifically, Defendant stated that "evidence of what happens to subassemblies in a third country does not tell us whether or not subassemblies imported in the United States are being used to circumvent a relief order with respect to CMTs." Transcript of Hearing 58–59. Plaintiffs also address the possibility of circumvention proceedings, asserting that "if Commerce has a real concern that protection for the U.S. industry might be inadequate, Commerce can institute an anti-circumvention investigation under 19 U.S.C. § 1677j(a)." Pl. Reply at 17.

Although this issue has not been squarely placed before the Court, the Court notes that the Trade Act of 1988 promulgated law to address the specific purpose of preventing circumvention of antidumping and countervailing duty orders.[3]

The Court notes that if Commerce is concerned about the possibility of circumvention, the appropriate method to resolve such concern would appear to be proceedings under the provisions specifically de-

---

**3.** That section lists the following factors for consideration in the course of investigations of possible circumvention:

(A) the pattern of trade,

(B) whether the manufacturer or exporter of the parts or components is related to the person who assembles or completes the merchandise sold in the United States from the parts or components produced in the foreign country with respect to which the order or finding ... applies, and

(C) whether imports into the United States of the parts or components produced in such foreign country have increased after the issuance of such order or finding.

19 U.S.C. § 1677j(a)(2) (1988).

signed to prevent circumvention. Without commenting on the adequacy of the investigation carried out by Commerce, the Court notes that in future proceedings in this context, attention to the considerations that Congress has deemed relevant in the context of circumvention proceedings will better achieve the intent of Congress and might help to shed more light on the nature of the transactions.

## CONCLUSION

For the foregoing reasons, the Court finds that Commerce's determination, that RF power semiconductors are within the scope of the Order, is not supported by substantial evidence on the record and is not in accordance with law.

The Court also finds that the Scope Ruling expands the scope of the Order and that this expansion is not in accordance with law.

Therefore, this Court reverses the Determination of the ITA and awards judgment for Plaintiffs. The Scope Ruling is set aside.