WIN–TEX PRODUCTS, INC., Plaintiff,

v.

UNITED STATES, Defendant,

and

Milliken & Company, Inc., Defendant–Intervenor.

No. 92–04–00302 (BN).

United States Court of International Trade.

Aug. 5, 1993.

Adduci, Mastriani, Schaumberg & Schill, Ralph H. Sheppard, Barbara A. Murphy and Robert J. Leo, New York City, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., Dept. of Justice, Jeffrey M. Telep, Atty., J.C. Lowe, Attorney–Advisor, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Wilmer, Cutler & Pickering, John D. Greenwald, Ronald I. Meltzer, Bahram A. Zia, Washington, DC, for defendant-intervenor.

## OPINION AND ORDER

NEWMAN, Senior Judge:

### INTRODUCTION

In this action, commenced pursuant to 28 U.S.C. § 1581(c), 19 U.S.C. § 1516a (a)(2)(A)(ii) and 19 U.S.C. § 1516a(a)(2)(B)(vi), plaintiff seeks to overturn the antidumping duty Final Scope Ruling of March 31, 1992 by the International Trade Administration, United States Department of Commerce ("ITA" or "Commerce"): *Final Scope Ruling on the Request By Win–Tex Products, Inc. for Clarification of the Scope of the Antidumping Duty Order on Shop Towels of Cotton From the People's Republic of China* ("Final Scope Ruling"). By its Final Scope Ruling, ITA determined that plaintiff's cotton shop towels imported from Honduras are within the scope of *Shop Towels of Cotton From the People's Republic of China; Antidumping Duty Order,* 48 Fed. Reg. 45,277 (October 4, 1983) ("Order").

Currently before me is plaintiff's motion under CIT Rule 56.2 for judgment upon the agency record that ITA's Final Scope Ruling is unsupported by substantial evidence on the record or is otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B). The relief sought by plaintiff is either the reversal of ITA's Scope Ruling and judgment on the existing record that plaintiff's shop towels from Honduras are not within the scope of the Order, or alternatively, a remand of the action to the agency with instructions to conduct a scope inquiry under 19 C.F.R. § 353.29(f), or alternatively, apply the scope criteria in 19 C.F.R. § 353.29(i)(2).

For the reasons that follow, this case is remanded to ITA for further proceedings, as specified below.

### BACKGROUND

On March 12, 1991, plaintiff filed an application with Commerce for a scope determination that plaintiff's shop towels from Honduras are not within the scope of the Order. Briefly, at ITA plaintiff argued for a scope ruling under 19 C.F.R. § 353.29(f), covering merchandise "completed or assembled" in a third country. As the basis for its contention that plaintiff's shop towels are "completed or assembled" in Honduras and excluded from the scope of the Order, plaintiff maintained before ITA, and argues here, that Chinese cotton greige fabric undergoes substantial manufacturing and finishing operations in Honduras resulting in a change in commercial identity of the Chinese fabric into finished or completed towels with significant added value, and that the towels completed in Honduras are not of the same class or kind as those covered by the Order because the product from Honduras is packaged and intended for marketing at the retail level of trade for home use, rather than sold to industrial users.

On March 31, 1992, after conducting a scope inquiry in accordance with 19 C.F.R. § 353(i)(1) rather than under § 353.29(f), as requested by plaintiff, ITA issued the Final Scope Ruling that plaintiff's shop towels from Honduras are within the scope of the Order. In an unpublished memorandum explaining its determination, ITA: (1) declined to con-

duct the scope inquiry pursuant to 19 C.F.R. § 353.29(f), finding that Win–Tex conducts only minimal processing in Honduras and hence its shop towels are not "completed or assembled" in a third country; (2) conducted the scope inquiry under 19 C.F.R. § 353.-29(i)(1), finding that the description of the shop towels covered by the Order is "dispositive"; and (3) declined to conduct further inquiry pursuant to the criteria in § 353.-29(i)(2).

### DISCUSSION

***Plaintiff's claim that its shop towels are "completed or assembled" in Honduras, and therefore, 19 C.F.R. § 353.29(f) is applicable.***

As noted above, in the Final Scope Ruling, ITA found that Win–Tex does not qualify for a scope review analysis under 19 C.F.R. § 353.29(f), which regulation (following 19 U.S.C. § 1677j(b)) provides certain criteria specifically applicable to products "completed or assembled" in a third country, and is intended to prevent circumvention of antidumping duty orders through third country operations.

In declining to conduct the scope inquiry under 19 C.F.R. § 353.29(f), as requested by plaintiff, ITA relied on the legislative history underlying the corresponding statutory provision, 19 U.S.C. § 1677j(b), pursuant to which the regulation was promulgated. Citing S. 490, S.Rep. No. 71, 100th Cong., 1st Sess. 99–101 (1987), ITA concluded that 19 U.S.C. § 1677j(b) does not apply to plaintiff's Honduras shop towel operations since plaintiff's "products imported into Honduras did not consist of parts or components, or of unfinished products being completed or assembled in that third country." Adm.Rec. 14 at 5. ITA also relied on 19 U.S.C. § 1677b(f) and agency precedents, explaining that, unless merchandise shipped through a third country is "substantially transformed prior to importation into the United States," such merchandise "may be determined to be within the scope of an existing antidumping duty order." Adm.Rec. 14 at 5–6. ITA reviewed Win–Tex's evidence regarding the additional operations performed in Honduras and con-

cluded that "the Honduran shipments do not enter the commerce of Honduras," and "[u]pon examination, we do not regard '. . . desizing, dying [sic], washing, drying, sorting and packaging' as constituting substantial transformation." Adm.Rec. 14 at 6 (quoting Win–Tex Request for Scope Determination at 15).

Plaintiff insists that its shop towels are "completed" in Honduras, and thus ITA was required, but failed, to apply the analysis for determining circumvention as set out in 19 U.S.C. § 1677j(b) and 19 C.F.R. § 353.29(f). Plaintiff further argues, and defendant does not dispute, that where the requisite third country processing exists, the circumvention criteria in 19 U.S.C. § 1677j(b) and 19 C.F.R. § 353.29(f) preempt other lines of scope inquiry.

As administrative precedent for a scope analysis under 19 C.F.R. § 353.29(f) and exclusion of its shop towels from the scope of the Order, Win–Tex called ITA's and the court's attention to a prior unpublished scope ruling involving shop towels from the PRC: *Final Scope Ruling on the Request of Able Textile Corporation for Clarification of the Scope of the Antidumping Duty Order on Shop Towels of Cotton from the Peoples' Republic of China (August 21, 1990 )* ("*Able Textile* "). Plaintiff insists that ITA erred in failing to follow the *Able Textile* analysis as precedential in the scope ruling regarding plaintiff's shop towels. Defendant contends that *Able Textile* is distinguishable on its facts from the present case.

There can be little question that as administrative precedent for a scope inquiry pursuant to § 353.29(f) on the basis of third country completion or assembly of shop towels and exclusion of the towels from the Order, *Able Textile* is pivotal to the present scope controversy.

In *Able Textile,* bolts or bales of cotton fabric (continuous length uncut and unhemmed material) imported into Canada from China were processed into shop towels by cutting to size, stitching the unfinished edges, stamp labelling and folding and packing for shipment to the United States. The Canadian processing, ITA found, resulted in a substantial value added to the Chinese

fabric (45 percent of the selling price to the United States). ITA determined that Able Textile's shop towels were "assembled" in Canada within the purview of 19 U.S.C. § 1677j(b) and 19 C.F.R. § 353.29(f) and excluded from the order because of the substantial value added by the Canadian manufacturing operations and the absence of any necessity for inclusion of Able Textile's shop towels in the order to prevent evasion.

As contrasted with Able Textile's continuous length bolts or bales of cotton fabric from China, which required *inter alia* cutting to size and shape and hemming in Canada, ITA found that most of the Win–Tex goods shipped from the PRC and imported into Honduras were pre-cut to size and hemmed fabric pieces that had the physical characteristics of already completed shop towels within the scope of the Order. The foregoing finding was based in part on Win–Tex' scope request itself stating that its Chinese fabric arrives in Honduras "principally * * * cut to shape and usually hemmed." Adm.Rec. 6 at 3–4. ITA also placed great significance on the fact that Win–Tex reported the cost of the Chinese fabric component of its shop towels imported into Honduras on a per dozen *towels* basis.

Plaintiff nonetheless maintains that ITA should have considered the pre-cut and hemmed fabric pieces as "finished" in Honduras by plaintiff's additional Honduran processing, and consequently as "completed or assembled" in a third country. Moreover, argues plaintiff, ITA failed to consider plaintiff's additional information in its Request for Scope Review that some of plaintiff's Chinese fabric is imported into Honduras in continuous length and is cut and/or hemmed in Honduras.

ITA reasonably concluded that its *Able Textile* determination is not precedential relative to plaintiff's pre-cut to size and hemmed pieces of fabric from the PRC imported into Honduras which already possessed the essential physical characteristics of the shop towels covered by the Order. ITA also reasonably interpreted the language "completed or assembled" in the statute and regulation in holding that the pre-cut

and hemmed pieces of fabric are already completed shop towels upon importation into Honduras.

Fundamentally, of course, in determining whether ITA acted reasonably and in accordance with law, the court must accord substantial deference to the agency's interpretation of the statute that it administers. *Zenith Elec. Corp. v. United States*, 988 F.2d 1573 (Fed.Cir.1993) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)); *Suramerica de Aleaciones Laminada, C.A. v. United States*, 966 F.2d 660, 665 (Fed.Cir.1992); *American Lamb Co. v. United States*, 785 F.2d 994, 1001 (Fed.Cir.1986).[1]

In sum, with regard to Win–Tex's pre-cut and hemmed shop towels imported into Honduras, ITA correctly found they were not "completed or assembled" in a third country and properly declined to conduct its scope inquiry pursuant to 19 C.F.R. § 353.-29(f).

Unfortunately and inexplicably, however, ITA failed to address the continuous length fabric that plaintiff disclosed in its request for a scope ruling is cut to size and/or hemmed in Honduras. Plaintiff complains that it factually pointed out to ITA that some of its Chinese osnaburg fabric is imported into Honduras in uncut, continuous lengths, but ITA failed to rule on those goods.

Plaintiff insists, and I agree, that ITA should have considered whether plaintiff's cut but unhemmed (unfinished) pieces of fabric and/or the uncut and unhemmed continuous length fabric imported into Honduras fall within the *Able Textile* rationale.[2] *See Nakajima All Co. v. United States*, 744 F.Supp. 1168, 14 CIT 469 (1990). Remand for ITA's

initial consideration and views as to the foregoing categories of merchandise is clearly warranted.

***Plaintiff's claim that ITA erred in finding the merchandise descriptions "dispositive" and refusing to consider the Diversified Products criteria.***

Having declined to apply 19 C.F.R. § 353.29(f) in this case, as requested by plaintiff, ITA made its Final Scope Ruling pursuant to § 353.29(i)(1) finding that, on the basis of the physical characteristics of plaintiff's towels, "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary and the Commission" are "dispositive." *Id.* However, § 353.29(i)(2) goes on to provide that "[w]hen the above criteria [merchandise descriptions] are not dispositive, the Secretary will further consider" the additional criteria provided in 19 C.F.R. § 353.29(i)(2)(i)-(iv), which include: (i) the physical characteristics of the product; (ii) the expectations of the ultimate purchaser; (iii) the ultimate use of the product; and (iv) the channels of trade. The foregoing are commonly referred to as the *"Diversified Products"* criteria, named after the decision in *Diversified Products Corp. v. United States*, 572 F.Supp. 883, 6 CIT 155 (1983).

I agree with plaintiff's contention that the descriptions of the merchandise are not "dispositive," and therefore ITA erred in refusing to apply the *Diversified Products* criteria in § 353.29(i)(2)(i)-(iv). Plaintiff correctly points up that the descriptions of shop towels contained in ITA's preliminary and final determinations and the Order describe the covered merchandise as "shop towels of cotton from the People's Republic of China, *which are currently classified under item number*

---

1. Defendant calls attention to *Smith Corona Corp. v. United States*, 811 F.Supp. 692, 695 (CIT 1993), approving Commerce's reliance on substantial transformation "[i]n determining if merchandise exported from an intermediate country is nonetheless covered by an antidumping order." However, I also note that *American NTN Bearing Mfg. Corp. v. United States*, 739 F.Supp. 1555, 1565, 14 CIT 320 (1990)) holds: "In the context of determining the scope of an antidumping duty order, 'substantial transformation' has little significance."

2. Defendant's sole argument as this category of merchandise is that plaintiff failed to attach to its request "any factual support" for its position in conformance with § 353.29(b)(2)(iii). Whatever the merits of such procedural argument had it been the expressed reasoning of the agency, here it is simply *post hoc* rationale by counsel that may not be attributed to the agency which chose not to discuss plaintiff's uncut and/or unhemmed fabric imported into Honduras.

*366.2740 of the Tariff Schedules of the United States Annotated."* 48 Fed.Reg. 45,277; 48 Fed.Reg. 12,764; 48 Fed.Reg. 37,055 (emphasis added). That referenced tariff classification embraces shop towels "dedicated to use in garages, filling stations and machine shops." The notice of initiation repeats this TSUS reference and in addition to describing the physical characteristics of shop towels, stresses their *use* in industrial and commercial facilities. 47 Fed.Reg. 41,149. Similarly, the ITC report describes the merchandise under investigation as "industrial wiping cloths used primarily for wiping machine parts and cleaning away ink, grease, oil, or other unwanted substances." According to ITC, "shop towels are usually purchased by industrial laundries, which, in turn rent them to commercial and industrial establishments. * * * Shop towels are classified under item 366.2740 of the [TSUS]." Adm.Rec. 3.

Plainly, and as strenuously urged by plaintiff, an ambiguity exists in the description of the merchandise concerning the scope of the Order as to whether shop towels that are *not* dedicated to use in the industrial settings specified in the TSUS, but rather are used in the household, are included in the Order. Therefore, I must agree with plaintiff that the "descriptions of the merchandise" within the purview of § 353.29(i)(1) are "not dispositive," within the meaning of § 353.29(i)(2), and hence, ITA should have made a full analysis following the *Diversified Products* criteria.

Notwithstanding ITA's references to industrial and commercial use of shop towels in the description of the merchandise and reference to the TSUS classification for shop towels "dedicated to use in garages, filling stations and machine shops," defendant argues that the description of the merchandise is "dispositive" within the purview of § 353.-29(i)(1). These references and the household use of plaintiff's towels are blandly dismissed by defendant as simply irrelevant to the scope of the Order.

■ It is recognized that in describing the merchandise, ITA may deviate from tariff classifications, *Royal Business Machines v. United States*, 507 F.Supp. 1007, 1014 n. 18, 1 CIT 80 (1980), *aff'd*, 669 F.2d 692 (Fed.Cir.1982)); that ITA has broad discretion in scope determinations, *Mitsubishi Elec. Corp. v. United States*, 898 F.2d 1577, 1583 (Fed.Cir.1990), *Gold Star Co. v. United States*, 692 F.Supp. 1382, 12 CIT 707 (1988), *aff'd sub nom.*, *Samsung Elec. Co. v. United States*, 873 F.2d 1427 (Fed.Cir.1989); and that reference to a specific tariff classification in the description of the merchandise in an order may be merely for administrative convenience or otherwise not intended to be conclusive as to the intended scope of the order. *Nitta Industries Corp. v. United States*, 997 F.2d 1459 (Fed.Cir.1993); *Smith Corona Corp. v. United States*, 915 F.2d 683, 686–87 (Fed.Cir.1990). Nevertheless, since the descriptions of the merchandise in question utilize the TSUS tariff classification for shop towels dedicated for use in garages, filling stations and machine shops (with no qualification that the TSUS description is merely for convenience) and the descriptions otherwise stress the industrial end uses of the shop towels covered by the investigation and Order as those used for removing grease, oil, ink, etc., such descriptions may hardly be regarded as a "dispositive" description of plaintiff's towels sold only in retail channels of trade for household use. *See Mitsubushi Electric Corp. v. United States*, 802 F.Supp. 455, 462 (CIT 1992), *appeal docketed*, No. 93–1212 (Fed.Cir.1993).

Under the facts and circumstances of this case, I am bound to reject defendant's position that consideration of the *Diversified Products* criteria is unnecessary. Accordingly, in its scope determination ITA should have considered, in addition to the physical characteristics of the merchandise, the use of the Win–Tex merchandise in the household, its retail channels of trade, and the expectation of the ultimate purchaser of the Win–Tex towels to use them for household cleaning. *See Mitsubushi*, 802 F.Supp. at 462.

■ As illustrated by the following cases, the description of the merchandise may make a product's end use critical to the scope of an antidumping order. *IPSCO, INC. v. United States*, 715 F.Supp. 1104, 13 CIT 489 (1989) (pipe "intended for use in drilling for oil and gas"); and *Mitsubishi, supra* (scope of an

order turned on the issue of dedication to an exclusive use).

Defendant attempts to distinguish *Mitsubishi* on the ground that there, in describing the merchandise, Commerce itself used the phrase "dedicated exclusively for use" and did not, as in the instant case, simply advert to a tariff classification based on dedication to use. However, in either case, the scope of the order with reference to the use of the product may be ambiguous or unclear and warrant additional findings under the *Diversified Products* analysis. *See also Kyowa Gas Chemical Industry Co., Ltd. v. United States*, 582 F.Supp. 887, 7 CIT 138 (1984).

Prior to the publication of § 353.29(i)(2), March 9, 1990, under which ITA explicitly "will * * * consider" in scope proceedings the four *Diversified Products* criteria listed if the descriptions of the product are not dispositive, case law addressed the issue of what circumstances were appropriate for consideration of those criteria by ITA in the event of ambiguity.

Thus, in *American NTN Bearing Mfg. Corp. v. United States*, 739 F.Supp. 1555, 1565, 14 CIT 320 (1990), the court held that it was proper for ITA to use the *Diversified Products* criteria as well as other appropriate factors to clarify an ambiguity in the descriptions of the merchandise as to whether a preexisting product is covered by the order. *See also Floral Trade Council v. United States*, 716 F.Supp. 1580, 13 CIT 638 (1989).

And in *Smith Corona Corp. v. United States*, 915 F.2d 683, 687 (Fed.Cir.1990), the court held that the *Diversified Products* criteria "are a sound approach to determining the status of products that have been modified since the time of the investigation and final order." Indeed, in *SKF USA, Inc. v. United States Dept. of Commerce*, 762 F.Supp. 344, 349, 15 CIT 152 (1991) the court held that application of the *Diversified Products* criteria is mandatory in scope determinations where the product in question is a newly developed one which was not in existence at the outset of the investigations. *See also Nitta Industries Corp. v. United States*, Slip Op. 92–51, 1992 WL 78429 (April 7, 1992), *aff'd* 997 F.2d 1459 (Fed.Cir.1993);

*Kyowa Gas Chemical Industry Co., Ltd., supra.*

Under the 1990 regulation, 19 C.F.R. § 353.29(i)(2), however, Commerce has made it clear that it will use *Diversified Products* criteria in those instances where, for any reason, the descriptions of the merchandise are not dispositive. The regulation is not limited to clarifications as to preexisting or modified products, and the test for resort to the *Diversified Products* criteria is broadened to simply whether or not the descriptions are "dispositive." In this case, I find that the merchandise descriptions are not dispositive, and accordingly insofar as § 353.-29(i) is applicable to plaintiff's shop towels, ITA is directed to consider the criteria listed in (i)(2).

### CONCLUSION

For the foregoing reasons, ITA's Final Scope Ruling is unsupported by substantial evidence on the record and otherwise is not in accordance with law. This action is remanded for reconsideration of all the facts of record in light of the criteria listed in § 353.-29(f) or in § 353.29(i)(2), as appropriate. The results of the remand shall be reported to this court within 45 days from the date of this order.