**ORDERED** that defendant shall provide the last known addresses of Arthur Trussell, Nancy Pohl, and Richard McNally, Sr. It is further ordered that plaintiff shall confine its use of these persons' addresses to the proceedings in this case.

**ERICSSON GE MOBILE COMMUNICATIONS INC., Murata Mfg. Co. Ltd. et al., Matsushita Electric Corp. of America et al., OKI Electric Industry Co., Ltd., Mitsubishi Electric Corp. et al., TDK Corp. of America, Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**Motorola, Inc., Defendant–Intervenor.**

Court No. 91–09–00703.

United States Court of
International Trade.

June 15, 1993.

**1086**

Sharretts, Paley, Carter & Blauvelt, Gail T. Cumins and Ned H. Marshak; New York City, for plaintiff Ericsson GE Mobile Communications, Inc.

Weil, Gotshal & Manges, Jeffrey L. Kessler, Randolph W. Tritell, and Martin S. Hyman, New York City, for plaintiff Matsushita Elec. Corp.

Baker & McKenzie, Thomas Peele, Washington, DC, for plaintiffs Mitsubishi Elec. Corp. and Mitsubishi Consumer Electronics America, Inc.

Arnold & Porter, Richard A. Johnson, Michael T. Shor, and Susan T. Morita, Washington, DC, for plaintiffs Murata Mfg. Co., Ltd. and Murata Erie North America.

William, Cutler & Pickering, Ronald I. Meltzer, Robert C. Cassidy, Jr., Washington, DC, for plaintiff OKI Elec. Co., Ltd.

Katten, Muchin & Zavis, Mark S. Zolno, James M. Lyons, and Robert F. Seely, Chicago, IL, for plaintiff TDK Corp. of America.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Civ. Div., Commercial Litigation Branch, U.S. Dept. of Justice, A. David Lafer and Michael S. Kane, Michelle Behaylo, Atty.-Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of Counsel, for defendant.

Timothy Harr, Washington, DC, and David F. Hixson, Schaumburg, IL, of Counsel, for defendant-intervenor.

## OPINION

CARMAN, Judge:

These consolidated actions contest the August 30, 1991 Commerce Determination that eleven electronic assemblies (duplexers, voltage controlled oscillators and active filters) manufactured and distributed by Murata Manufacturing Co., Ltd. and Murata Eire North America Inc. are within the scope of the antidumping duty order, *Antidumping Duty Order: Cellular Mobile Telephones and Subassemblies Thereof From Japan*, 50 Fed.Reg. 51,724 (1985). The Court has jurisdiction in this action pursuant to 28 U.S.C. § 1581(c) (1988), granting it authority over any civil action commenced under 19 U.S.C. § 1516a. The present action is commenced under 19 U.S.C. § 1516a(a)(2)(B)(vi) (1988).

## BACKGROUND

On November 5, 1984, Motorola, Inc. initiated an antidumping investigation of "cellular mobile telephones manufactured in Japan,

plus all mobile transceivers or kits of components and subassemblies manufactured in Japan for use in final assembly of cellular mobile telephones." Petition of Motorola, Inc. at 10 (R.Doc. 1). An affirmative preliminary determination of sales at less than fair value was issued by Commerce on June 4, 1985. *Cellular Mobile Telephones and Subassemblies from Japan; Preliminary Determination of Sales at Less Than Fair Value,* 50 Fed.Reg. 24,554 (1985). Commerce issued its final less than fair value determination on October 24, 1985, finding that CMTs and subassemblies from Japan were sold at less than fair value. *Cellular Mobile Telephones and Subassemblies from Japan; Final Determination of Sales at Less Than Fair Value,* 50 Fed.Reg. 45,447 (1985) (*Final Determination*). On December 18, 1985, Commerce issued an antidumping order. *Antidumping Duty Order: Cellular Mobile Telephones and Subassemblies Thereof From Japan,* 50 Fed.Reg. 51,724 (1985).

The scope of Commerce's investigation is described in the *Final Determination* as "cellular mobile telephones (CMTs), CMT transceivers, CMT control units, and certain subassemblies thereof, which meet the tests set forth below." *Final Determination,* 50 Fed.Reg. at 45,447. Commerce explained the coverage of "subassemblies" as follows:

> Subassemblies are any completed or partially completed circuit modules, the value of which is equal to or greater than five dollars, and which are dedicated exclusively for use in CMT transceivers or control units. The term "dedicated exclusively for use" only encompasses those subassemblies that are specifically designed for use in CMTs, and could not [be] used, absent alteration, in a non-CMT device.

*Id.* at 45,448. The Department then provided its rationale for including subassemblies and for selecting five dollars as the cutoff amount:

> The Department selected the five dollar value for defining the scope since this is a value that it had determined is equivalent to a "major" subassembly. The Department feels that a dollar cutoff point is a more workable standard than a subjective determination such as whether a circuitry module is "substantially complete".... The presumption is that CMT subassemblies are covered by the order unless an importer can prove otherwise.... The determination to include subassemblies within the scope of the investigation was based on the need to prevent circumvention of any antidumping order on CMTs through the importation of major CMT subassemblies and the Department's broader conclusion that the investigation should include subassemblies.

*Id.*

Five of the Japanese respondents in the original investigation, including three of the plaintiffs in this case (Mitsubishi, Matsushita and OKI), appealed the CMT Order to the U.S. Court of International Trade. The parties sought to have the CMT Order overturned because they believed it was too broad in its coverage of CMT subassemblies. The five cases were consolidated under *Mitsubishi Elec. Corp. v. United States,* 12 CIT 1025, 700 F.Supp. 538 (1988), *aff'd,* 8 Fed.Cir. (T) 45, 898 F.2d 1577 (1990) (*Mitsubishi I*). This Court held in *Mitsubishi I* that the "scope of the investigation was not overreaching or broad, but was reasonably designed to effectuate the administration of the antidumping law." *Id.* at 1049–50, 700 F.Supp. at 558.

The plaintiffs appealed to the United States Court of Appeals for the Federal Circuit arguing "that the Administration acted improperly in making the antidumping order applicable to subassemblies, the value of which is equal to or greater than five dollars." *Mitsubishi Elec. Corp. v. United States,* 8 Fed.Cir. (T) 45, 49, 898 F.2d 1577, 1581 (1990). The Federal Circuit affirmed this Court's decision stating, "we cannot say that the Administration abused its discretion or acted contrary to the record in concluding that the antidumping order should cover all subassemblies valued at five dollars or more." *Id.* at 51; 898 F.2d at 1583. In response to plaintiffs' challenge of the Administration's determination that subassemblies are the same class or kind of merchandise as CMTs the Federal Circuit concluded "that the Administration justifiably concluded, upon an adequate basis in the record,

that subassemblies valued at five dollars or more and 'dedicated exclusively for use' in CMTs, are the same 'class or kind' of merchandise as the CMTs in which they ultimately are incorporated." *Id.* at 52, 898 F.2d at 1583–84.

On January 13, 1986, Murata requested a scope determination on several of the products it imports into the United States (voltage controlled oscillators (VCOs), duplexers, active filters and single filters). The products at issue perform diverse functions:

A voltage control oscillator ("VCO") produces a signal at various frequencies depending upon the voltage introduced. VCOs are used to generate a frequency that is mixed with an incoming or outgoing signal to produce a signal that can pass through a radio's circuitry, a function common to all transmitting and receiving radio devices. A VCO includes an oscillator, associated control circuitry and a buffer amplifier, all of which are self-contained within a small metal or plastic housing. (Jan. 30, 1991 Mitsubishi Letter to Commerce R.Doc. 17 at 5 (Pl.App. 28); Jan. 30, 1991 Matsushita Letter to Commerce R.Doc. 14 attached affidavit of independent electrical engineering expert at 2 (Pl.App. 25)).

Joint Summary of Record Evidence Pertaining to Actual and Potential Use of the Subject Merchandise in Electronic Devices Other Than CMTs ("Joint Summary") at 1.

A duplexer is a two-way receiving and transmitting microwave filter. Essentially, a duplexer allows an antenna both to transmit and to receive signals. When receiving, an antenna indiscriminately picks up the radio waves of many frequencies. When these waves pass through the receiving section of the duplexer, the duplexer filters out unwanted frequencies and allows only a selected frequency range to pass through, thereby minimizing background noise and static. When transmitting, another section of the duplexer works exactly in the reverse. (Jan. 13, 1986 Murata Scope Request, R.Doc. 4 at 3–5 (Pl. App. 15).) A duplexer includes two bandpass filters encased in a self-contained metal housing. (Jan. 30, 1991 Matsushita

Letter to Commerce, R.Doc. 14 attached affidavit of independent electrical engineering expert at 2–3 (Pl.App. 25)).

Joint Summary at 5.

Active filters are filters that are used in conjunction with other components, such as capacitors, to select audio frequencies that can pass through a radio's circuitry. . . . (Jan. 30, 1991 Matsushita Letter to Commerce, R.Doc. 14 at 11–12, attached affidavit of independent electrical engineering expert at 2 (App. 25).) The function of the subject active filter is to permit signals within a certain bandwidth to pass. (July 25, 1991 Murata Letter to Commerce, R.Doc. 26, at Tab 5 (Pl.App. 33).)

Joint Summary at 12. Although Commerce analyzed the fourth product, single filters, for all purposes as duplexers, single filters "cannot perform a duplexing function unless they are joined in appropriate circuitry with other filters, connectors, substrates and other materials." Joint Summary at 11.

Murata was not a party to Commerce's original less than fair value investigation, as the only Japanese producers investigated were producers of complete CMTs. Murata produces and distributes independently-traded Japanese electronic components, but does not produce or distribute CMTs. (R.Doc. 39 at 2). Its customers include both unrelated U.S. and Japanese producers of CMTs and producers of other products. (R.Doc. 39 at 2).

On February 24, 1986, Commerce notified interested parties of an opportunity to comment on Murata's request for a scope determination. Comments were received, but Commerce took no further action until January 3, 1991, when it requested updated comments from interested parties.

In its comments to Commerce, Murata made several arguments. First, Murata claimed that its CMT subassemblies should be excluded because Murata was not a corporate affiliate of any company that assembles CMTs. *Preliminary Scope Determination,* May 31, 1991 Memorandum from Roland L. MacDonald, Director, Office of Antidumping Compliance, to Joseph A. Spetrini, Deputy Assistant Secretary for Compliance at 4.

Commerce responded to Murata's argument as follows: "As noted in our preliminary ruling, the description of the subassemblies covered by the order makes no distinction among the relationships between importers; rather, it describes covered subassemblies as those 'dedicated exclusively for use' in CMTs." *Final Scope Determination* at 6. Commerce stated that the language from the *Final Determination* "indicates that subassemblies that are 'dedicated exclusively for use' in CMTs are within the scope of the order regardless of whether they are produced by related or unrelated parties." *Prelim. Determination* at 7.

Murata next argued that the duplexers, VCOs and active filters were not really "subassemblies." *Id.* at 8. Commerce responded to this argument by first pointing out that "[d]uplexers are specifically listed in the final determination as an example of a subassembly covered by the order." *Id.* at 10. As to the other Murata products, Commerce stated that circuit modules are components "that perform one or more of the functions designated as necessary to a CMT." *Id.* at 11. Commerce found that all of the Murata products performed or helped to perform CMT functions, and therefore were subassemblies "within the scope of the order." *Id.*

For its third argument, Murata claimed that its products were not "dedicated exclusively for use" in CMTs. *Id.* Commerce responded as follows:

> To determine whether a subassembly can be used in a non-CMT device, we look to whether it is being incorporated into a non-CMT device which is commercially available in the United States. The Department sets this standard of commercial availability because it holds, in agreement with Motorola, that hypothetical uses are not sufficient to exclude CMTs from the order. Furthermore, one-time sales would be too easy to create a one-time use for an electrical component for the sole purpose of evading an order.

*Id.* at 13. Murata had failed to produce any evidence of a non-CMT use in the United States, thus Commerce concluded that the imported subassemblies were dedicated exclusively for use in CMTs. *Id.*

Based upon these above findings, Commerce issued a preliminary determination finding that the Murata subassemblies were subject to the CMT Order. On August 30, 1991, Commerce issued its Final Scope Determination, affirming the preliminary ruling in all material respects. *Final Scope Determination* at 19.

Complaints challenging the Scope Ruling were filed in the U.S. Court of International Trade by Murata, Ericsson GE Mobile Communications Inc., Matsushita Electric Corp. of America and Matsushita Communications Industrial Corp. of America, Mitsubishi Electric Corp. and Mitsubishi Consumer Electronics America, Inc., OKI Electronic Industry Co., Ltd., and TDK Corp. of America. The Court consolidated the six actions on April 10, 1992.

### CONTENTIONS OF THE PARTIES

Plaintiffs' challenge to Commerce's Scope Determination is based on three arguments. First, plaintiffs argue that Commerce has changed the scope of its order in a manner inconsistent with its original terms. Plaintiffs claim that Commerce has changed the scope of its order in three significant ways: 1. Commerce departed from the "dedicated exclusively for use in CMT transceivers or control units" standard set forth in the original Order; 2. Commerce added new criteria to the Order switching from a "could be used" test to an "actual use" test and switching from a "dedicated exclusively" standard to a "commercially available" significant alternative use in the United States standard; 3. Commerce redefined the term "subassembly" in a manner that expands the scope of the CMT Order to include components instead of only major subassemblies.

Secondly, plaintiffs contend that Commerce extended the scope of the CMT Order to independently traded components produced by non-CMT manufacturers without ever analyzing whether such components are the same "class or kind" of merchandise as CMTs. Plaintiffs argue that had Commerce applied the required criteria of *Diversified Prods. Corp. v. United States*, 6 CIT 155, 572 F.Supp. 883 (1983), it would have determined

that the components are of a different "class or kind." Plaintiffs state that the Murata components cannot be considered the same "class or kind" based upon Commerce's aim of preventing circumvention of its order. Plaintiffs reason that since Murata does not manufacture CMTs, it cannot circumvent an order to which it never could have been subject in the first place.

Finally, plaintiffs argue that Commerce's factual finding that Murata's components are "designed to operate within the range reserved by the Federal Communications Commission (FCC) specifically for CMT devices," is not supported by substantial evidence. Plaintiffs contend that there is no frequency range reserved by the FCC exclusively for CMTs and that several of Murata's components are not even designed to operate within the cellular band.

Commerce argues that its determination that the VCOs, duplexers, and active filters manufactured by Murata are within the scope of the order is reasonable, supported by substantial evidence on the record, and is in accordance with the law. Commerce contends that it was not required to conduct a new class or kind analysis because neither the *Final Determination* nor the Order established that the relationship of the parties producing CMTs and CMT subassemblies is a basis, in and of itself, for exclusion of the subassembly from the scope of the order.

Defendant further argues that the scope of the order was not changed as plaintiffs claim. Commerce contends the requirement that plaintiffs demonstrate imported components are incorporated into non-CMT devices in the United States is implicit in the standard set forth in the Order and the *Final Determination*. Commerce claims that to effectuate the purpose of distinguishing between those subassemblies that were intended to be excluded from the *Final Determination* and subassemblies imported to circumvent the Order, the "could not be used, absent alteration, in a non-CMT device" test requires evidence of actual use.

## STANDARD OF REVIEW

In an action challenging Commerce's determination that imported merchandise is covered by an existing antidumping duty order, this Court must base its review on whether the challenged determination is supported by substantial evidence on the record and is otherwise in accordance with law. 19 U.S.C. § 1516a(a)(2)(B)(vi), (b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd,* 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted).

## DISCUSSION

The issue before the Court is whether the inclusion of certain Murata duplexers, VCOs and active filters within the scope of the CMT Order represents an unlawful expansion of the Order or merely a lawful clarification of its terms.

■ "It is well established, and undisputed here, that the ITA has the authority to clarify the scope of its antidumping duty orders. Commerce, however, may not expand the scope of such orders beyond the merchandise encompassed by the final less than fair value determination." *Mitsubishi Elec. Corp. v. United States,* 16 CIT ——, ——, 802 F.Supp. 455, 458 (1992) (citation omitted) (*Mitsubishi II*). The Court of Appeals for the Federal Circuit has also spoken to this issue, stating that "[a]lthough the scope of a final order may be clarified, it cannot be changed in a way contrary to its terms." *Smith Corona Corp. v. United States,* 8 Fed. Cir. (T) ——, ——, 915 F.2d 683, 686 (1990).

### A. Definition of Covered Subassembly

■ Plaintiffs first argue that Commerce departed from the scope of the original investigation by altering the definition of covered subassemblies. Commerce contends that it did not change the scope of the order and that those items that plaintiff labels changes were actually factors implicit in the scope of the original investigation. The Court holds that Commerce unlawfully expanded the scope of the original Order by altering the definition of covered subassemblies.

Commerce defined subassemblies in the *Final Determination* as follows:

> Subassemblies are any completed or partially completed circuit modules, the value of which is equal to or greater than five dollars, and which are dedicated exclusively for use in CMT transceivers or control units. The term "dedicated exclusively for use only encompasses those subassemblies that are specifically designed for use in CMTs, and could not [be] used, absent alteration, in a non-CMT device."

50 Fed.Reg. at 45,448. Plaintiffs claim that Commerce abandoned the first part of the definition, "[s]ubassemblies are any completed or partially completed circuit modules," and substituted a new test requiring inquiry as to whether the part was necessary to perform a function of the CMT or contribute to a function necessary for a CMT. Because, as will be discussed below, the Court agrees with plaintiff that Commerce has impermissibly expanded the third part of this definition, it does not reach this argument.[1]

The third part of the definition requires that the subassembly (1) be specifically designed for use in CMTs, and (2) could not be used absent alteration in a non-CMT device. Plaintiffs contend that Commerce changed the third part of the definition by (1) changing a "could be used" test to an "actually is used" test; (2) adding a new requirement that the actual alternative use be in the United States subsequent to importation; and (3) adding a new requirement that the actual use in the United States be commercially available. The government claims that implicit in the "could be used" standard in the Order is the requirement that the parties adhere to an "actually is used and is commercially available in the United States" standard. The Court holds that these requirements are not implicit in the Order, but

instead amount to an expansion of the scope of the CMT Order.

### 1. Could be Used v. Actually is Used

The Court holds that the Scope Ruling unlawfully expands the Order to exclude only those subassemblies that have actual non-CMT uses. The test, as stated in the *Final Determination,* is whether the subassemblies "are specifically designed for use in CMTs, and could not [be] used, absent alteration, in a non-CMT device." 50 Fed.Reg. at 45,448. Commerce chose to use the language "*could not be used* absent alteration in a non-CMT device" (emphasis added), and cannot change the standard by simply disavowing its original standard in a scope ruling. *See Mitsubishi II*, 16 CIT at ——, 802 F.Supp. at 460–61 (holding that the challenged scope ruling unlawfully expanded the order at issue, the same order which is at issue in this case, by using an "actual use" standard).

■ Plaintiffs offered evidence which tends to establish that certain of its subassemblies are not dedicated exclusively for use in CMT transceivers or control units. Plaintiffs have thus established that certain of the products at issue (which are listed below) could be, and apparently are, used absent alteration in non-CMT devices. The record appears to offer little or nothing to rebut this evidence. Potential uses listed by plaintiffs and supported by substantial evidence on the record are:

> Murata VCO (MQC013–835): measurement equipment and signal generators;[2]
> Murata Duplexer (DFY3R784CR835B): portable cellular telephones (PCTs) (which are expressly excluded from the scope of the CMT Order);[3]
> Murata Single Filter (DFC6R883P026BTM): AMPS (U.S. standard for analog mobile phone system) base stations;[4]

---

1. The second part of the definition, "the value of which is equal to or greater than five dollars," is not at issue.

2. *See* July 25, 1991 Murata Letter to Commerce, R.Doc. 26 at 26, Tab 4 (detailing actual use of virtually identical next-generation components and providing comparison of the technical specifications for the subject VCO and the next-generation Murata VCO MQC007–835).

3. *See id.* at 28, Tab 10.

4. *See id.* at 25, Tab 14 (detailing actual use of virtually identical next-generation components and demonstrating the overlap of all key electrical specifications for the subject single filter and the next-generation single filter (DFC5R836P025BTR); pointing out that despite the fact that Commerce analyzed single filters as duplexers single filters cannot in fact perform a

Murata Single Filter (DFC6R838P026BTM): AMPS base stations;[5]

Murata Active Filter (AFC94A001X2): PCTs and network control unit of facsimile machine;[6]

Murata Active Filter (AFC920A001A2): PCTs and modern transmitting device;[7]

Murata Active Filter (AFC911F001A1): PCTs and facsimile receiving devices;[8] and,

Murata Active Filter (AFM98F001A2): PCTs and facsimile transmitting devices.[9]

Defendant argues that for certain of the listed products,[10] plaintiffs have only provided evidence of the use of another allegedly similar subassembly. Joint Summary at 3, 7–9, 11–12. However, neither defendant nor defendant-intervenor can point to evidence on the record contradicting plaintiffs' certified declarations from an engineering manager attesting to the fact that each of the next generation products is virtually identical to its respective predecessor. As pointed out in plaintiffs' July 25, 1991, letter to Commerce:

[Plaintiffs] requested a scope ruling in January of 1986 on these eleven parts. It is extremely difficult to gather data on the non-CMT uses of the specific eleven parts for which we requested a ruling at that time, due to the passage of more than five years. We are, however, submitting information on non-CMT uses in some cases of the improved models.

R.Doc. 26 at 25. Plaintiffs should not be faulted when, due to the lengthy passage of time involved in this case,[11] improved models replace discontinued merchandise.[12] This is especially so in an area of rapid technological change and constant innovation which all the parties, including Commerce, readily acknowledge.

The Court observes plaintiffs have supplied evidence which tends to demonstrate that the listed Murata subassemblies are not dedicated exclusively for use in CMT transceivers or control units. None of the defendants has directed the Court's attention to any evidence in the record establishing that each of the next generation products is not virtually identical to its respective predecessor. In addition, none of the defendants has shown the Court any evidence on the record that tends to rebut the evidence offered by plaintiffs that the Murata subassemblies are not dedicated exclusively for use in non-CMT devices or control units. Therefore, the Court agrees with the plaintiffs on this point and holds that the listed Murata subassemblies are not "dedicated exclusively for use in CMT transceivers or control units."

Defendants contend that as to two of the Murata Duplexers, DFY2R835CR880BSG and DFY2R835CR880BSP, the listed potential use in PCT boosters is covered by the

---

duplexing function unless they are joined in appropriate circuitry with other filters, connectors, substrates and other materials).

5. *See id.*

6. *See id.* at Tabs 5 and 7.

7. *See id.* at Tabs 5 and 6.

8. *See id.* at Tabs 5 and 8.

9. *See id.* at Tabs 5 and 9.

10. The items for which virtually identical next generation products were used as bases for potential use are the following: Murata VCO MQC013–835, Murata Duplexer DFY2R835CR880BSP, Murata Duplexer DFY2R835CR880BSG, Murata Single Filter DFC6R883P026BTM, and Murata Single Filter DFC6R838P026BTM. Murata Duplexer models DFY2R835CR880BSP and DFY2R835CR880BSG will be discussed separately below.

11. On January 13, 1986, less than one month after the CMT Order was published, Murata filed a request for a scope ruling. After Commerce requested comments from interested parties on February 24, 1986, it took no further action for *four years.* When for the first time on October 23, 1990, Commerce published notice in the Federal Register of its pending scope requests, Murata's request was not listed. After Murata brought this omission to Commerce's attention, the Department requested updated comments and on August 30, 1991, *five and a half years* after Murata's initial request, the final scope ruling was issued.

12. *See* July 25, 1991 Murata Letter to Commerce, R.Doc. 26 at Tab 3, in which the engineer manager states that VCO MQC013–785, a VCO at issue in this proceeding, was discontinued and was replaced by VCO MQC013–786.

Order. Defendants state that "[t]he use of a subassembly in a 'booster' that creates a CMT in an automobile is not a non-CMT use, because the booster is in essence a CMT transceiver." Joint Summary at 7–9. Subsequent to oral argument, the Court requested the parties to provide a definition of "PCT booster," making specific references to the administrative record. The Court agrees with defendant and defendant-intervenor's responses indicating that the record does not adequately aid the Court in its determination as to whether a booster is a CMT transceiver or control unit. Therefore, the Court holds that as to these two duplexers, DFY2R835CR880BSG and DFY2R835CR880BSP, a remand is necessary. Commerce shall develop a record on remand establishing the definition of a "booster" and determine whether the term fits within the definition of CMT transceiver or control unit.

### 2. Use in the United States

█ Commerce argues, that because it only has the authority to remedy dumping in the United States and is concerned only with the effect of dumping upon United States domestic industries, it is clear that the term "use" in the "dedicated exclusively for use" test refers to use in the United States. Contrary to Commerce's position,

[t]he Court finds nothing in the language of the Order that requires importers to show use of CMT subassemblies in the production of non-CMT devices in the United States. This result cannot therefore be sustained as a mere clarification of the Order. Therefore the Court [holds] that the imposition of the requirement that [the products at issue] must be used in the production of non-CMT devices in the United States expands the scope of the Order and is not supported by substantial evidence on the record and is not in accordance with law.

*Mitsubishi II*, 16 CIT at ——, 802 F.Supp. at 461.

Plaintiffs point to evidence on the record which provides an example of actual use in Japan of Murata VCOs other than in CMT transceivers or control units. *See* R.Doc. 26 at 25–26, Tab 3. This evidence, consisting of a certified declaration of a Murata Mfg. Co. Ltd. engineering manager, indicates that the subject VCO (MQC013–785) is actually used in global positioning systems in Japan. *Id.* Based on this evidence, the Court holds that there is ample evidence of actual use on the record.

### 3. Commercial Availability

As with the "use in the United States" analysis, the Court finds no language or analysis in the *Final Determination* that supports Commerce's inclusion of a commercial availability requirement. The Court holds that this is a new requirement which changes rather than clarifies the Order.

### B. Duplexers

The government raises the argument that regardless of the outcome regarding active and single filters and VCOs, duplexers are specifically included in the Order. Defendant points to the following language in support of this contention:

Examples of subassemblies which may fall within this definition are circuit modules containing any of the following circuitry or combinations, thereof: audio processing, signal processing (logic), RF, IF, synthesizer, duplexer, power supply, power amplification, transmitter and exciter.

*Final Determination* at 45,448. Although duplexers are listed as an example of a circuit module which *may* fall within the Order's definition of subassembly, an item must first meet the three-part definition established by Commerce. The Court has already determined that Murata Duplexer DFY3R784CR835B is not dedicated exclusively for use in CMT transceivers or control units.[13] Thus, as to this particular duplexer, defendant's argument fails. However, the Court will not be able to determine whether Murata Duplexers DFY2R835CR880BSG and DFY2R835CR880BSP satisfy the three-part definition established by Commerce un-

---

**13.** *See supra* Discussion, Part A, 1 (listing products, including Murata Duplexer

DFY3R784CR835B with potential uses that are supported by substantial evidence on the record).

til the remand is complete. Therefore, the Court does not address defendant's argument as it relates to these two duplexers.

### C. Independently Traded Subassemblies

Plaintiffs' next argument is that Commerce unlawfully expanded the scope of the Order to cover independently traded subassemblies without ever having performed the "same class or kind of merchandise" analysis. Plaintiffs claim that Commerce limited its original analysis in the *Final Determination* to related subassemblies and thus did not decide the independently traded component issue. Plaintiffs further argue that application of the analysis demonstrates that the products in issue are not the "same class or kind" as those Commerce sought to cover by the *Final Determination.* Commerce refutes this argument by claiming that the relationship of the parties is not a basis for exclusion of a given producer's subassembly from the scope of the Order.

The language of the *Final Determination* provides support for Murata's argument. In the *Final Determination,* Commerce concluded that "CMT subassemblies that are 'dedicated exclusively for use' in CMTs are the same 'class or kind' of merchandise as complete CMTs." 50 Fed.Reg. at 45,448. Commerce then listed the factors upon which it based the determination that a new product was within the "class or kind" of merchandise described in a prior antidumping finding:

(1) General physical characteristics, (2) the expectations of the ultimate purchasers, (3) the channels of trade in which the product is sold, (4) the manner in which the product is advertised and displayed, and (5) the ultimate use of the merchandise in question.

*Id.* A discussion of the application of these factors to CMT subassemblies followed in which Commerce made references to subassemblies manufactured in-house. The only reference to unrelated parties excluded them from the analysis: "While some CMT components may be purchased by CMT manufacturers from unrelated parties, the Department has reason to believe that such separately traded items may not meet the 'dedi-

cated exclusively for use' criteria, and therefore would not be covered by the scope of any order." *Id.*

Although this Court has already decided cases involving the *Final Determination* in question, it has not to this point been presented with the "independently traded subassemblies" issue. *See Mitsubishi I; Mitsubishi II,* 16 CIT at ——, 802 F.Supp. at 455. In fact, Motorola and the government represented to this Court during oral argument in *Mitsubishi I* that the issue of independent components was not before the Court because the issue had not been raised in the *Final Determination. Mitsubishi Elec. Corp. v. United States,* Consol.Ct. No. 85–12–01858, March 31, 1987 Hearing Transcript at 61–62. The Court nevertheless notes that before Commerce concludes in further scope rulings based on the Order at issue that independently traded subassemblies are the "same class or kind" of merchandise covered by the Order, it must first apply the same factors it applied to in-house subassemblies in the *Final Determination.*

### CONCLUSION

The Court holds that the Scope Ruling expands the scope of the Order and that this expansion is not in accordance with law. The Scope Ruling is set aside and vacated.

Furthermore, after analyzing the products at issue based on the language of the Order itself, the Court holds that the following nine products are not within the scope of the Order, and that Commerce's determination to the contrary was not supported by substantial evidence on the record and was not in accordance with law: Murata VCO (MQC013–835), Murata Duplexer (DFY3R784CR835B), Murata Single Filter (DFC6R883P026BTM), Murata Single Filter (DFC6R838P026BTM), Murata Active Filter (AFC94A001X2), Murata Active Filter (AFC920A001A2), Murata Active Filter (AFC911F001A1) and VCO (MQC013–785).

However, after analyzing two of the products at issue, Murata Duplexers DFY2R835CR880BSG and DFY2R835CR880BSP, based on the language of the Order itself, the Court holds that a remand is necessary. Commerce is

directed to develop a record on remand establishing the definition of a "booster" and to determine whether a booster is a CMT transceiver or control unit within the meaning of the Order. Remand results are due within forty days of the date of this opinion. Any comments or responses by the parties to the remand results are due within thirty days thereafter and shall be limited to ten pages. Any rebuttal comments are due within fifteen days of the date responses or comments are due and shall be limited to five pages.

### ORDER

**ORDERED** that the Determination of the Department of Commerce is reversed in part and remanded in part; and it is further

**ORDERED** that the Scope Ruling is set aside and vacated; and it is further

**ORDERED** that the following nine products are not within the scope of the Order: Murata VCO (MQC013–835), Murata Duplexer (DFY3R784CR835B), Murata Single Filter (DFC6R883P026BTM), Murata Single Filter (DFC6R838P026BTM), Murata Active Filter (AFC94A001X2), Murata Active Filter (AFC920A001A2), Murata Active Filter (AFC911F001A1) and VCO (MQC013–785); and it is further

**ORDERED** that as to the following two products, Murata Duplexers DFY2R835CR880BSG and DFY2R835CR880BSP, the matter is remanded to Commerce to develop a record establishing the definition of a "booster" and to determine whether a booster is a CMT transceiver or control unit within the meaning of the Order. Remand results are due within forty days of the date of this opinion. Any comments or responses by the parties to the remand results are due within thirty days thereafter and shall be limited to ten pages. Any rebuttal comments are due within fifteen days of the date responses or comments are due and shall be limited to five pages.