ERICSSON GE MOBILE COMMUNICA-
TIONS INC., Murata Mfg. Co., Ltd. et
al., Matsushita Electric Corp. of Amer-
ica et al., OKI Electric Industry Co.,
Ltd., Mitsubishi Electric Corp. et al.,
TDK Corp. of America, Plaintiffs,

v.

UNITED STATES, Defendant,

Motorola, Inc., Defendant–Intervenor.

Court No. 91–09–00703.
Slip Op. 94–55.

United States Court of
International Trade.

April 5, 1994.

Sharretts, Paley, Carter & Blauvelt, P.C.,
Gail T. Cumins and Ned H. Marshak, New
York City, for plaintiff Ericsson GE Mobile
Communications, Inc.

Weil, Gotshal & Manges, Jeffrey L. Kes-
sler, Martin S. Hyman, and Katherine A.
Suprenant, New York City, for plaintiff Mat-
sushita Elec. Corp.

Baker & McKenzie, Thomas Peele, Wash-
ington, DC, for plaintiffs Mitsubishi Elec.
Corp. and Mitsubishi Consumer Electronics
America, Inc.

Arnold & Porter, Richard A. Johnson, Mi-
chael T. Shor, and Susan T. Morita, Wash-
ington, DC, for plaintiffs Murata Mfg. Co.,
Ltd., and Murata Erie North America.

Wilmer, Cutler & Pickering, Ronald I.
Meltzer and Robert C. Cassidy, Jr., Wash-
ington, DC, for plaintiff OKI Elec. Co., Ltd.

Katten, Muchin & Zavis, Mark S. Zolno,
James M. Lyons, and Robert F. Seely, Chi-
cago, IL, for plaintiff TDK Corp. of America.

Frank W. Hunger, Asst. Atty. Gen., David
M. Cohen, Director, Civil Div., Commercial
Litigation Branch, U.S. Dept. of Justice, A.
David Lafer, Michelle Behaylo, Attorney–Ad-
visor, Office of the Chief Counsel for Import
Admin., U.S. Dept. of Commerce, Washing-
ton, DC, of counsel, for defendant.

Motorola, Inc., Timothy Harr, Washington,
DC, for defendant-intervenor.

## OPINION

CARMAN, Judge:

Plaintiffs contest the Department of Com-
merce's (Commerce) remand results in *Final
Ruling—Scope Remand Ericsson GE Mobile
Communications Inc., et al. v. United States*
(1993) (*Remand Determination*). Defen-
dant and defendant-intervenor seek to have
the remand determination sustained. The
Court retained jurisdiction over this matter
during the pendency of Commerce's remand
investigation.

## BACKGROUND

This consolidated action originally contest-
ed the August 30, 1991 Commerce determi-

nation that certain electronic assemblies/components manufactured and distributed by Murata Manufacturing Co., Ltd. and Murata Erie North America Inc. are within the scope of the antidumping duty order in *Cellular Mobile Telephones and Subassemblies From Japan,* 50 Fed.Reg. 51,724 (Dep't of Comm. 1985) (*CMT Order*). The products covered by the *CMT Order* are "cellular mobile telephones (CMTs), CMT transceivers, CMT control units, and certain subassemblies thereof[.]" *Id.* at 51,725. Commerce explained the coverage of "subassemblies" in its *CMT Order* as follows:

Subassemblies are any completed or partially completed circuit modules, the value of which is equal to or greater than five dollars, and which are *dedicated exclusively for use in CMT transceivers or control units.* The term "dedicated exclusively for use" only encompasses those subassemblies that are specifically designed for use in CMTs, and could not be used, absent alteration, in a non-CMT device.

*Id.* (emphasis added).

In *Ericsson,* this Court vacated Commerce's scope ruling. *Ericsson GE Mobile Communications Inc. v. United States,* 17 CIT ——, ——, 825 F.Supp. 1085, 1095 (1993) (*Ericsson*). After analyzing the products at issue based on the language of the *CMT Order,* the Court reversed Commerce's determination with respect to nine of the eleven Murata products at issue. *Id.* at ——, 825 F.Supp. at 1094–95. The Court held the administrative record was not sufficient, however, to determine whether use of two duplexers in a "booster," their listed potential use, constituted a non-CMT use. Accordingly, the Court ordered Commerce to develop a record on remand establishing the definition of a "booster" and "to determine whether a booster is a CMT transceiver or control unit within the meaning of the Order." *Id.* at ——, 825 F.Supp. at 1093, 1094–95.

The eleven Murata electronic assemblies/components originally in question in this action consist of duplexers, voltage control oscillators (VCOs), and active filters. The products still at issue are Murata duplexers DFY2R835CR880BSG and DFY2R835CR880BSP. A duplexer is defined as

a two-way receiving and transmitting microwave filter. Essentially, a duplexer allows an antenna both to transmit and to receive signals. When receiving, an antenna indiscriminately picks up the radio wave of many frequencies. When these waves pass through the receiving section of the duplexer, the duplexer filters out unwanted frequencies and allows only a selected frequency range to pass through, thereby minimizing background noise and static. When transmitting, another section of the duplexer works exactly in the reverse.... A duplexer includes two bandpass filters encased in a self-contained metal housing.

*Id.* at ——, 825 F.Supp. at 1088 (citations omitted).

On remand, Commerce defined a basic booster as "a device that consists of at least an R/F power amplifier and a duplexer and which at least 1) amplifies the power of a combination unit to greater than .6 watts and 2) allows such a device to transmit and receive signals simultaneously at this enhanced power." *Remand Determination* at 9. Commerce determined "that a booster is a CMT transceiver since the basic booster provides certain necessary functions common to all CMTs, which typically reside in a traditional transceiver[.]" *Id.* Because boosters are included within the scope of the *Order,* Commerce concluded, the use of duplexers in a booster is a CMT transceiver use within the scope of the *Order.* Commerce also determined "that a booster is radio-telephone equipment designed to operate in a cellular radio-telephone system which has not been specifically excluded from the scope of the Order and which is, therefore, within the scope of the Order." *Id.* at 1.

## CONTENTIONS OF THE PARTIES

Plaintiffs complain Commerce has improperly expanded the scope of the *CMT Order.* Plaintiffs contend a portable cellular telephone (PCT) booster is neither a CMT transceiver nor control unit, and that it is not used in, or in connection with, a CMT transceiver or control unit. Instead, plaintiffs maintain, a PCT booster is an accessory to an excluded

product: a PCT. Additionally, plaintiffs argue, because the Murata duplexers are not "circuit modules," they do not fit within the *CMT Order's* definition of subassembly, and are thus not covered by the *CMT Order*.

According to plaintiffs, Commerce's reasoning that the PCT booster can be "characterized" as a CMT transceiver because it "performs at least some of the necessary functions of a CMT that typically reside in the 'transceiver'" is contrary to law and record evidence. Plaintiffs complain Commerce has impermissibly expanded the *CMT Order* by using a "some-of-the-functions" test. If Commerce were allowed to define a transceiver as any device that performs a necessary CMT function that typically resides in a transceiver, then plaintiffs argue, there would no longer be a separate item called a subassembly. Plaintiffs assert a booster is not a transceiver just because it performs some of the functions of subassemblies typically found in a CMT transceiver.

The PCT, plaintiffs claim, uses its own transceiver to make and receive calls with the PCT booster merely enhancing the functioning of the PCT by amplifying its radio signal. Based on Commerce's reasoning, plaintiffs continue, the PCT has two transceivers if the booster is a transceiver. Yet, according to plaintiffs, it is impossible for a PCT to have two transceivers. Moreover, plaintiffs assert Commerce's new test is inconsistent with Commerce's prior scope rulings where Commerce determined that PCTs were excluded from the *CMT Order* even when sold in conjunction with a booster.

Finally, plaintiffs contend Commerce should not have refused to conduct a same "class or kind" analysis. Plaintiffs maintain an examination of the *Diversified Products*[1] criteria shows Murata's duplexers, as well as the PCT boosters in which the duplexers are used, are a different "class or kind" of merchandise than CMTs. Plaintiffs conclude Commerce's determination is inconsistent

with the definition of a CMT transceiver contained in the *CMT Order*, Commerce's final determination, the ITC's final determination, and Motorola's petition.

Defendant argues boosters are transceivers and, therefore, the two duplexers at issue are covered by the *CMT Order*. Commerce maintains its determination that the *CMT Order* covers the duplexers is supported by substantial evidence on the record and should be sustained. According to Commerce, a PCT booster should be characterized as a CMT transceiver because it performs at least two of the functions typically performed by a CMT transceiver and it is a form of radio-telephone equipment designed to operate in a cellular telephone system. Commerce complains parties would be able to easily evade the *CMT Order* if the Court were to accept plaintiffs' narrow definition of transceivers.

Regardless of whether a booster is covered by the *CMT Order*, Commerce claims the two duplexers at issue are covered by the *CMT Order* because they are later generation models and are thus not "absent alteration." According to Commerce plaintiffs have attempted to demonstrate that their products could be used in a non-CMT device, by providing evidence of later generation models. Because the evidence is not of potential or actual use of the duplexer models at issue, Commerce contends the duplexers are altered and therefore, fail to satisfy the "absent alteration" requirement of the *CMT Order*.

Motorola agrees with Commerce's determination that boosters are CMT transceivers and argues the agency purposely drafted the *CMT Order* with broad language to prevent evasion. Motorola supports its position by claiming multiple bases for including the duplexers within the scope of the *CMT Order*. According to Motorola, the two duplexers come within the scope of the *CMT Order*,

---

1. *Diversified Prods. Corp. v. United States*, 6 CIT 155, 572 F.Supp. 883 (1983). The *"Diversified Products* criteria" have been incorporated into Commerce's own regulations. *See* 19 C.F.R. § 353.29(i)(2) (1993). The regulation directs Commerce to examine the following factors when the descriptions of the merchandise in the

petition, initial investigation and determinations are not sufficient to guide Commerce in making its scope determination: (1) "[t]he physical characteristics of the product;" (2) "[t]he expectations of the ultimate purchasers;" (3) "[t]he ultimate use of the product;" and (4) "[t]he channels of trade." *Id.*

because a booster (1) is "radio telephone equipment designed to operate in a cellular radio telephone system;"[2] (2) is "a box of electronic subassemblies which receives and transmits cellular calls;"[3] and (3) consists of CMT circuit modules performing CMT functions.

Defendant–Intervenor refutes plaintiffs' assertions that Commerce has previously determined that boosters are excluded from the *CMT Order*. According to Motorola, Commerce has consistently stated in the determinations cited by plaintiffs it would not address the issue of boosters because none of the requesting parties asked it to do so. Furthermore, defendant-intervenor contends the Court should not address whether Commerce properly determined the two duplexers are "circuit modules" within the meaning of the *CMT Order* and whether Murata's independently-traded duplexers are the same "class or kind" of merchandise as complete CMTs and in-house subassemblies. Plaintiffs claim the Court must address these issues if the Court holds a booster is a PCT transceiver, but Motorola maintains these issues are not before the Court.

## STANDARD OF REVIEW

In an action challenging Commerce's determination, this Court must decide whether the determination is supported by substantial evidence on the record and is otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd*, 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted).

## DISCUSSION

"It is well established, and undisputed here, that the ITA has the authority to clarify the scope of its antidumping duty orders. Commerce, however, may not expand the scope of such orders beyond the merchandise encompassed by the final less than fair value

determination." *Mitsubishi Elec. Corp. v. United States*, 16 CIT ——, ——, 802 F.Supp. 455, 458 (1992) (citations omitted). The Court of Appeals for the Federal Circuit has also spoken to this issue, stating "[a]lthough the scope of a final order may be clarified, it cannot be changed in a way contrary to its terms." *Smith Corona Corp. v. United States*, 8 Fed.Cir. (T) 180, 182, 915 F.2d 683, 686 (1990) (citation omitted).

The issue of whether Murata's duplexers are covered by the *CMT Order* depends upon whether they are "dedicated exclusively for use in CMT transceivers or control units." *CMT Order*, 50 Fed.Reg. at 51,725. The Court, therefore, instructed Commerce in its remand investigation to determine whether a booster, the product in which the duplexers could be used, is a CMT transceiver or control unit within the meaning of the *CMT Order*. Although Commerce determined on remand that the booster is covered by the scope of the *CMT Order*, this Court holds Commerce has unlawfully expanded the scope of the *CMT Order*.

In its remand determination, Commerce states a booster is a CMT transceiver because "the basic booster provides certain necessary functions common to all CMTs which typically reside in a traditional transceiver." *Remand Determination* at 1. With this explanation, Commerce has created a new standard which was not part of either the *CMT Order* or the Final Determination's "Scope of Investigation." The *CMT Order* described a transceiver in the following language: "a box of electronic subassemblies which receives and transmits calls." *CMT Order*, 50 Fed. Reg. at 51,725. It is undisputed by the parties that a booster is unable to receive and transmit calls. As the government acknowledged at oral argument, a booster receives and transmits *signals*. In order to receive cellular *calls*, a device must be able to convert incoming radio signals into audio signals, and to transmit such calls, the device must be able to convert outgoing audio signals into radio signals. If Commerce wanted to include boosters within the definition of a transceiver, it could have done so simply by

---

2. Defendant–Intervenor's Brief at 4; *see also CMT Order*, 50 Fed.Reg. at 51,725.

3. Defendant–Intervenor's Brief at 2; *see also CMT Order*, 50 Fed.Reg. at 51,725.

using the word "signals" instead of "calls." Commerce may not, however, at this late date change the scope of its order.

Commerce asserts plaintiffs should not have relied on the particular language in the *Order* "a box of electronic subassemblies which receives and transmits calls," because "there can be no bright-line test as to what constitutes control units and transceivers." *Remand Determination* at 13. Commerce presents an absurd argument: respondents may not rely on the language of an order, but must instead apply a standard which Commerce has failed to articulate. It is up to Commerce to clearly establish what products are covered by a particular order. Commerce did not include boosters (or duplexers by themselves) within the scope of the *CMT Order*. The Court holds, therefore, the agency has unlawfully expanded the scope of the *CMT Order* by subsequently determining the two duplexers at issue are covered by the *Order* because boosters are CMT transceivers.

Commerce further justifies its finding that boosters are within the scope of the *Order* by concluding a booster is "radio-telephone equipment designed to operate in a cellular radio-telephone system which has not been specifically excluded from the scope of the Order[.]" *Remand Determination* at 1. Once again Commerce has created a new standard, and has thus unlawfully expanded the scope of the *Order*. The above-quoted language appears in both the *Final Determination* and the *CMT Order* but it appears as the definition of a CMT and not as a description of the boosters. *See Final Determination*, 50 Fed.Reg. at 45,447; *CMT Order*, 50 Fed.Reg. at 51,725. Commerce could have properly decided to include all "radio-telephone equipment designed to operate in a cellular radio-telephone system which has not been specifically excluded from the scope of the Order" within the scope of the *Order*. Because Commerce chose not to make such an inclusion and used the quoted language merely as a description of a CMT, it cannot now impose this new standard on respondents.

Defendant–Intervenor argues Commerce broadly drafted the *CMT Order* in order to accommodate advances in technology. The products at issue, however, were in existence at the time Commerce drafted the *CMT Order* and Commerce could have expressly included them within the scope of the *CMT Order*. In fact, not only were the two duplexers in existence, but the PCT booster was as well. *Remand Determination* at 21.

Commerce and defendant-intervenor stress to the Court that it is necessary to include the booster, and therefore the duplexers, within the scope of the *Order* to carry out the "intent" of the *Order*. *Remand Determination* at 6, 7, 13. The Court finds this argument meritless. Parties must be able to rely on a final determination or order as written—they cannot be required to discern Commerce's intent in drafting a final determination or order. To hold otherwise would inject a degree of uncertainty into trade activities which Congress never envisioned.

Defendant further complains the two Murata duplexers are later generation models and are thus not "absent alteration." The Court has already rejected this argument:

Plaintiffs should not be faulted when, due to the lengthy passage of time involved in this case, improved models replace discontinued merchandise.... None of the defendants has directed the Court's attention to any evidence in the record establishing that each of the next generation products is not virtually identical to its respective predecessor.

*Ericsson*, 17 CIT at ——, 825 F.Supp. at 1092 (footnotes omitted). The lengthy passage of time to which the Court referred involved the five and one-half years it took Commerce to complete the final scope ruling which Murata had requested less than one month after Commerce published the *CMT Order*. *Id.* at —— n. 11, 825 F.Supp. at 1092 n. 11.

## CONCLUSION

After considering all of the parties' arguments, the Court holds (1) Commerce has unlawfully expanded the scope of the *CMT Order* and (2) Murata Duplexers DFY2R835CR880BSG and DFY2R835CR880BSP are not within the

scope of the *CMT Order.* Accordingly, the Court reverses Commerce's remand determination in *Final Ruling—Scope Remand Ericsson GE Mobile Communications Inc.,* et al. v. United States (1993).