**SMITH CORONA CORPORATION,**
**Plaintiff,**

v.

**UNITED STATES, Defendant,**

**Brother Industries, Ltd., Brother International Corp., and Brother Industries (USA), Inc., Defendants–Intervenors.**

**Court No. 91–11–00827.**

United States Court of
International Trade.

Jan. 27, 1993.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Julie B. Chasen, and Robert A. Weaver, Washington, DC, for plaintiff.

Stuart Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Marc E. Montalbine, Jeffery C. Lowe, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant.

Hogan & Hartson, Lewis E. Leibowitz and Steven J. Routh; Tanaka & O'Leary, H. William Tanaka and Patrick F. O'Leary, Washington, DC, for defendants-intervenors.

## OPINION

RESTANI, Judge:

In *Portable Electric Typewriters from Japan*, 56 Fed.Reg. 58,031 (Dep't Comm. 1991), the International Trade Administration of the Department of Commerce ("ITA") found that Brother Industries, Ltd. and Brother Industries (USA), Inc. were not circumventing the antidumping duty order on portable electric typewriters ("PETs") from Japan. Plaintiff, Smith Corona Corporation, challenges the determination.

This case involves a dispute over interpretation of the anticircumvention statute, 19 U.S.C. § 1677j (1988). Smith Corona claims that ITA erred because it: (1) ignored certain statutory factors; (2) excluded third country parts from Japan value; and (3) rejected its argument concerning transfer of the assembly line from Japan to the United States. ITA's determination will be upheld if based on substantial evidence and in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988).

1.  Statutory Factors

██  The anticircumvention statute provides, in part:

§ 1677j. **Prevention of circumvention of antidumping and countervailing duty orders**

(a) **Merchandise completed or assembled in United States**

(1) **In general**

If—

(A) merchandise sold in the United States is of the same class or kind as any other merchandise that is the subject of—

(i) an antidumping duty order issued under section 1673e of this title, ...

(B) such merchandise sold in the United States is completed or assembled in the United States from parts or compo-

nents produced in the foreign country with respect to which such order or finding applies, and

(C) the difference between the value of such merchandise sold in the United States and the value of the imported parts and components referred to in subparagraph (B) is small, the administering authority, after taking into account any advice provided by the Commission under subsection (e) of this section, may include within the scope of such order or finding the imported parts or components referred to in subparagraph (B) that are used in the completion or assembly of the merchandise in the United States at any time such order or finding is in effect.

**(2) Factors to Consider**

In determining whether to include parts or components in a[n] ... antidumping duty order ..., the administering authority shall take into account such factors as—

(A) the pattern of trade,

(B) whether the manufacturer or exporter of the parts or components is related to the person who assembles or completes the merchandise sold in the United States from the parts or components produced in the foreign country with respect to which the order ... applies, and

(C) whether imports into the United States of the parts or components produced in such foreign country have increased after the issuance of such order or finding.

19 U.S.C. § 1677j(a). Smith Corona argues that § 1677j(a)(1) is a "general clause," and § 1677j(a)(2) provides factors ITA must consider to determine whether the general clause should apply. ITA disagreed with this interpretation. It found that it was required to determine as a threshold matter under § 1677j(a)(1) whether the difference in value between completed PETs and parts imported from Japan was small. 56 Fed.Reg. at 58,033. If the difference in value was small, ITA found that it had *discretion* to include the parts and components within the antidumping duty order, taking into account the factors

set forth in § 1677j(a)(2). 56 Fed.Reg. at 58,033–34.

ITA's interpretation comports with the plain meaning of the statute. Section 1677j(a)(1) states that ITA "may" include parts and components in the antidumping duty order, if the criteria under that section are met. Section 1677j(a)(2) provides the factors that ITA must consider to determine "whether" to include parts and components within the order. The interpretation that Smith Corona urges on the court is unfounded. Furthermore, its arguments based on congressional intent are meritless and, in any event, irrelevant in light of the express statutory language.

2. Third Country Parts and Japan Value

■ Smith Corona claims ITA erred because it failed to investigate and verify the extent to which parts from third countries contained Japanese value, and it improperly placed the burden of proof on Smith Corona to submit evidence of the Japanese value in third country parts.

ITA excluded third country parts from its analysis on the following grounds:

We find no legal basis for including third country parts in our calculation of the difference between the value of Japanese parts and components and the end-product.... Even assuming that such a legal basis exists, Smith Corona has not provided sufficient evidence that indicates that Brother provided manufacturing assistance other than direct Japanese investment in a related subsidiary. Direct Japanese investment alone is not a sufficient basis to treat parts manufactured in a third country as Japanese parts.

There is no evidence that PET parts exported by Brother from its related subsidiary in Malaysia are in fact products from Japan, *i.e.*, that they are merely transshipped....

In addition, ... parts and components which are imported from unrelated suppliers in third countries, and which are of third country origin cannot be viewed as being part of the Japan value of the finished product. As these parts are fur-

ther manufactured in third countries, they cannot be viewed as produced in a country with respect to which the anti-dumping duty order applies....

56 Fed.Reg. at 58,036.

Smith Corona contends that third country parts are designed and engineered in Japan, and contain Japanese subparts and components; therefore, their Japanese content should be considered in the value comparison set forth in § 1677j(a)(1). This is not what is required by statute. The statute provides that, when assembly is transferred to the United States, the value of the merchandise sold in the United States shall be compared with "parts or components *produced in the foreign country with respect to which ... [the antidumping] order ... applies."* 19 U.S.C. § 1677j(a)(1)(B) (emphasis added). The question then is to determine where the parts are produced.

It is apparent from ITA's determination that it considers merchandise to be "produced" in the country exporting to the United States if final manufacture occurs there. In the absence of simple transshipment, some production would occur in the exporting country. *See Television from Japan,* 46 Fed.Reg. 30,167, 30,167 (Dep't Comm.1981) (results of examination of possible transshipments) (televisions exported from third countries not subject to dumping finding on Japanese televisions, absent evidence of transshipment).[1] ITA has found that transshipment occurs when factors such as the following are present: (1) the subject merchandise does not enter the commerce of the third country; (2) the subject merchandise is not physically integrated with any other component and no value is added in the third country; and (3) the subject country's manufacturer is related

to the third country assembler and the U.S. importer, and knows at the time of exportation that the merchandise will be exported to the United States. *See Color Picture Tubes from Japan,* 52 Fed.Reg. 44,171, 44,172 (Dep't Comm.1987) (final determ. of sales at less than fair value). In determining if merchandise exported from an intermediate country is nonetheless covered by an antidumping order, ITA has also considered whether the essential component is substantially transformed in the country of exportation.[2] *Erasable Programmable Read Only Memories (EPROMs) from Japan,* 51 Fed.Reg. 39,680, 39,692 (Dep't Comm.1986) (final determ. of sales at less than fair value) (computer parts exported through intermediate country included in investigation because they contain essential components of finished merchandise and are not substantially transformed in third country); *Dynamic Random Access Memory Semiconductors of 256 Kilobits and Above from Japan,* 51 Fed.Reg. 28,396, 28,397 (Dep't Comm.1986) (suspension of investigation and amendment of prelim. determ.) (same).

In this case, Smith Corona does not claim that transshipment, as defined by ITA, has taken place. Nor does it allege that the parts in question constitute "essential components" that originated in Japan and were not substantially transformed in a third country. The standards developed by ITA reasonably identify the country in which parts or components are "produced." As this is the determination that the statute requires, ITA's methodology was not contrary to law.

As for Smith Corona's argument that parts and components may be characterized as products of Japan based on design

---

**1.** In *Television from Japan,* 46 Fed.Reg. 30,167, ITA identified six key components in a television. It found that each component represented significant value, or its inclusion substantially transformed the unit. It found transshipment did not occur as long as any one of the six key components was not of Japanese origin.

**2.** Smith Corona argues rules of origin applied by the Customs Service are irrelevant and it does not attempt to demonstrate that Japan is the country of origin of the relevant parts in the

Customs sense; that is, that the parts originated in Japan and were not substantially transformed in third countries. *See* 19 C.F.R. § 134.-1(b) (1992). ITA apparently does use a substantial transformation test if the essential component of the item covered by the antidumping order is exported through a third country, but its view of what constitutes substantial transformation may differ from that of the Customs Service.

and engineering, no specific support is provided, and the argument runs contrary to the statute, which makes production, not the design and engineering aspects of production, the critical factor. *See* 19 U.S.C. § 1677j(a)(1)(B).[3] If ITA's decision as to where merchandise is produced were to be based on design and engineering, a first step in production, rather than on the final stage of production prior to exportation, the statute would be unworkable.

### 3. Third Country Parts and Operations in Japan Prior to Antidumping Order

 In a further effort to bring third country parts under the rubric of Japan value, Smith Corona argued before ITA that third country parts, which were formerly incorporated into Japanese PETs, were included within the scope of the original antidumping order. 56 Fed.Reg. at 58,034. Smith Corona then claimed that Brother simply transplanted the assembly line from Japan to the United States, so third country parts are still covered by the antidumping duty order. *Id.*

ITA rejected this argument because there was *no evidence on the record as to* the extent of operations in Japan prior to the antidumping duty order. 56 Fed.Reg. at 58,035. Smith Corona claims error.

Whether or not ITA's reasoning was a proper basis for rejecting Smith Corona's argument, the claim would fail. The statute clearly describes the circumstances under which parts and components may be included within the scope of an antidumping duty order, if assembly is moved to the United States. 19 U.S.C. § 1677j(a)(1). It says nothing about abandoning those standards if the merchandise contained third country parts during the period when assembly took place in the subject country. Smith Corona's claim does not fall within the terms of the statute. Accordingly, ITA's determination is sustained.

---

**3.** Of course, subject merchandise that is completed or assembled in third countries may be included within the scope of an antidumping order, if the statutory criteria are met. This situation is not presented, however. 19 U.S.C. § 1677j(b) (1988).