**E.I. DU PONT DE NEMOURS & COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant,**

**Air Products and Chemicals, Inc., Defendant–Intervenor.**

**Slip. Op. 98–46.
Court No. 97–01–00055.**

United States Court of
International Trade.

April 15, 1998.

Crowell & Moring LLP (Barry E. Cohen, Matthew Tuchband), Washington, DC, for Plaintiff.

Frank W. Hunger, Assistant Attorney General of the United States, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; Velta A. Melnbrencis, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; Of Counsel, Linda A. Andros, Attorney–Advisor, Office of Chief Counsel for Import Administration, United States Department of Commerce, Washington, DC, for Defendant.

Ellis & Aeschliman (David R. Busam) and Wickens & Lebow (Edward M. Lebow), Washington, DC, for Defendant–Intervenor.

## OPINION

POGUE, Judge.

This case is before the Court on Plaintiff's, E.I. DuPont de Nemours & Company ("DuPont"), motion for judgment upon the agency record pursuant to USCIT R. 56.2. The Plaintiff challenges the Department of Commerce ("Commerce") determination that polyvinyl alcohol ("PVA") produced in Taiwan from DuPont's own U.S.-origin materials is foreign merchandise within the scope of the antidumping duty order, entitled *Polyvinyl Alcohol From Japan, the People's Republic of China, and Taiwan,* 61 Fed.Reg. 24,286 (Dep't Commerce 1996)(antidumping duty ord.)("Order"). This Court has jurisdiction over this matter under 19 U.S.C. § 1516a(a)(2)(B)(vi)(1994) and 28 U.S.C. § 1581(c)(1994).

### Background

In March 1995, Air Products and Chemicals, Inc. ("Air Products"), a domestic producer of PVA, filed a petition requesting that Commerce initiate an antidumping investigation of certain PVA from Taiwan.[1] In April 1995, Commerce initiated the requested investigation to determine whether imports of

---

**1.** The petition and investigation also covered imports of PVA from the Republic of Korea, the People's Republic of China and Japan.

PVA from Taiwan, were being, or were likely to be sold in the United States at less than fair value. *Polyvinyl Alcohol From Japan, the Republic of Korea, the People's Republic of China, and Taiwan,* 60 Fed.Reg. 17,053 (Dep't Commerce 1995)(init. antidumping duty investigation). The period of investigation ("POI") was April 4, 1994, through March 31, 1995. *Polyvinyl Alcohol From Taiwan,* 61 Fed.Reg. 14,064, 14,065 (Dep't Commerce 1996)(final det.).

As a result of its investigation, Commerce determined that the subject merchandise was being sold in the United States at less than fair value. Chang Chun Petrochemical Co., Ltd. ("Chang Chun"), the sole Taiwan producer of the subject merchandise was assigned an *ad valorem* weighted-average dumping margin of 19.21%. *Id.* at 14,073.

On May 14, 1996, Commerce published the Order covering PVA imported from Taiwan. The scope of the Order was defined as follows:

> The merchandise covered by these orders is polyvinyl alcohol. Polyvinyl alcohol is a dry, white to cream-colored, water-soluble synthetic polymer. This product consists of polyvinyl alcohols hydrolyzed in excess of 85 percent, whether or not mixed or diluted with defoamer or boric acid. Excluded from this investigation are polyvinyl alcohols covalently bonded with acetoacetylate, carboxylic acid, or sulfonic acid uniformly present on all polymer chains in a concentration equal to or greater than two mole percent, and polyvinyl alcohols covalently bonded with silane uniformly present on all polymer chains in a concentration equal to or greater than one-tenth of one mole percent. Polyvinyl alcohol in fiber form is not included in the scope of these orders.

61 Fed.Reg. at 24,287.

On October 1, 1996, DuPont requested a scope ruling from Commerce pursuant to 19

C.F.R. § 353.29. *See* C.R. Doc. No. 1 (Application for Scope Determination: Polyvinyl Alcohol From Taiwan, No. A–583–824, Oct. 1, 1996) ("Application"). Through this process, Commerce determines whether certain products fall within the scope of an order.[2] *See* 19 C.F.R. § 353.29; *Ericsson GE Mobile Communications, Inc. v. United States,* 60 F.3d 778, 783 (Fed.Cir.1995).

Plaintiff's Application sought a ruling from Commerce excluding "PVA produced by" Chang Chun from DuPont's U.S.-origin vinyl acetate monomer ("VAM") pursuant to a contractual relationship with DuPont, from coverage under the Order. Application at 2–3. DuPont described its relationship with Chang Chun as "a tolling relationship, in which one party (the toll producer or toller) performs a manufacturing process on the goods of another party (the owner)." *Id.* at 3.

According to the Application, DuPont produces VAM in the United States and ships it to Chang Chun. Chang Chun performs a chemical process in which the VAM is polymerized into polyvinyl acetate. *Id.* at 2. The polyvinyl acetate is then converted to PVA in a second chemical process. A solvent aids the process, and certain other chemicals are used as processing aids. *Id.* "On completion of the conversion process, [most] of the PVA produced by Chang Chun is shipped by DuPont back to the United States. Sales of PVA are made by DuPont to customers in the United States and elsewhere." *Id.* at 3.

While DuPont recognizes that its PVA was imported from Taiwan, the company claims that "PVA toll-produced in Taiwan from DuPont's U.S.-origin raw materials and re-exported to the United States" is not within the scope of the Order because the imported PVA "is a [U.S.] product for antidumping purposes."[3] *Id.* at 2, 5.

---

**2.** A scope determination can be initiated by Commerce, 19 C.F.R. § 353.29(a), or by the application of an interested party, 19 C.F.R. § 353.29(b). The application contains detailed information which Commerce considers in determining whether a formal scope inquiry is warranted. *Id.* If an inquiry is not warranted, Commerce "issues a final ruling as to whether the merchandise which is the subject of the application is

included in the existing order." *Id.* If a scope inquiry is warranted, Commerce requests comments from all interested parties, and subsequently issues its determination. *Id.*

**3.** The parties agree that the merchandise subject to the Order is PVA and that the merchandise imported by DuPont is PVA. Pl.'s Mem. Supp. Mot. J. Agency R. at 3 ("Pl.'s Brief").

DuPont concedes that its PVA is Taiwanese for Customs' country-of-origin purposes; nonetheless, DuPont argues, it controls the entire production process; it manufactures PVA from U.S.-origin materials, and it controls the selling price of the final product. Pl.'s Brief at 22–23. Therefore, DuPont claims, Chang Chun is merely a "final processor" and Chang Chun's processing does not give the merchandise its national character. *Id.* at 22.

After determining that no formal scope inquiry was warranted, 19 C.F.R § 353.29(b), Commerce decided that "the product imported by DuPont falls within the antidumping order on PVA from Taiwan, unless [Commerce] conclude[s] that the U.S.-origin input provided by DuPont, VAM[,] is not substantially transformed in Taiwan (*i.e.*, the processing of VAM into PVA does not constitute substantial transformation)." P.R. Doc. No. 5 at 3 (Final Scope Ruling on Antidumping Duty Order on Polyvinyl Alcohol from Taiwan, Dec. 19, 1996)("Scope Determination").

■ Substantial transformation generally refers to a degree of processing or manufacturing resulting in a new and different article. *See e.g., Cold–Rolled Carbon Steel Flat Products From Argentina,* 58 Fed.Reg. 37,-062, 37,066 (Dep't Commerce 1993)(final det.)(finding that galvanizing is a bonding process which changes the character and use of the sheet, therefore, a cold-rolled sheet that is galvanized in a subject country is substantially transformed into a product of that country); *Limousines From Canada,* 55 Fed.Reg. 11,036, 11,040 (Dep't Commerce 1990)(final det.)("The Department considers limousine conversion to be a sophisticated process which transforms the base vehicle into a new and different article of merchandise."). Using this standard, Commerce "examined whether the degree of processing or manufacturing" necessary to convert VAM into PVA "resulted in a new and different article," and determined that the processing by Chang Chun constituted substantial transformation. Scope Determination at 3. Commerce, therefore, concluded that "the imported PVA must be considered Taiwanese PVA that is subject to the order." *Id.*

**Standard of Review**

■ The Court of International Trade reviews Commerce's scope determination to decide whether it is in accordance with law and supported by substantial evidence. *See* Section 516A(b)(1)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(b)(1)(B)(i)(1994).

■ In determining whether Commerce's interpretation and application of the antidumping statute is in accordance with law, this court applies the two-step analysis articulated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), as applied and refined by the Federal Circuit. The first task is "to determine whether Congress has 'directly spoken to the precise question at issue.'" *Id.* If the statute unambiguously deals with the subject matter in issue, the court, as well as the agency, must give effect to the intent of Congress. *Id.; see, e.g., Ad Hoc Committee of AZ–NM–TX–FL Producers of Gray Portland Cement v. United States,* 13 F.3d 398, 402–403 (Fed. Cir.1994), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 23 (1994); *Zenith Electronics Corp. v. United States,* 988 F.2d 1573, 1582 (Fed.Cir.1993).

■ "If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. Considerable weight is accorded Commerce's construction of the antidumping laws, whether that construction manifests itself in the application of the statute, *see, e.g., Daewoo Electronics Co. v. Int'l Union of Electronic, Elec., Technical, Salaried and Mach. Workers,* 6 F.3d 1511, 1516 (Fed.Cir.1993), *cert. denied,* 512 U.S. 1204, 114 S.Ct. 2672, 129 L.Ed.2d 808 (1994); *Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1039 (Fed.Cir.1996), or in the promulgation of a regulation, *see, e.g., Smith–Corona Group v. United States,* 713 F.2d 1568, 1575 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984).

■ When examining Commerce's factual determinations to decide whether they are

supported by substantial evidence, the court must determine whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support [Commerce's] conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)(quoted in *Matsushita Elec. Indus. Co. v. United States,* 750 F.2d 927, 933 (Fed.Cir.1984)). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

### Discussion

■ Antidumping orders are issued for "a class or kind of foreign merchandise." *See* 19 U.S.C § 1673(1)(1994). The statute does not define "foreign"; nor does it contain a standard for Commerce to apply in determining whether the merchandise at issue is a domestic product or a product of a foreign nation. When a statute is silent or ambiguous, the Court must defer to Commerce's reasonable interpretation. *Koyo Seiko Co. v. United States,* 36 F.3d 1565, 1573 (Fed.Cir. 1994). In this case Commerce's decision to use the "substantial transformation" test to determine the nationality of the subject merchandise is a permissible application of the statute.

The "substantial transformation" rule provides a yardstick for determining whether the processes performed on merchandise in a country are of such significance as to require that the resulting merchandise be considered the product of the country in which the transformation occurred. *See Smith Corona Corp. v. United States,* 17 CIT 47, 50, 811 F.Supp. 692, 695 (1993)(noting that in determining if merchandise exported from an intermediate country is covered by an antidumping order, Commerce identified the country of origin by considering whether the essential component is substantially transformed in the country of exportation); *Fer-*

*rostaal Metals Corp. v. United States,* 11 CIT 470, 473, 664 F.Supp. 535, 537 (1987)(stating that in determining if a product originated in the country of exportation, Commerce considered whether operations performed on products in the country of exportation are of such a substantial nature to justify the conclusion that the resulting product is a manufacture of that country). Further, the standard provides a means by which this court can understand the basis of the agency's action and so may review Commerce's exercise of its statutory responsibilities. *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade,* 412 U.S. 800, 807, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973).

In its scope determination here, Commerce relied on its "substantial transformation" rule to determine whether DuPont's PVA was a product of Taiwan. Scope Determination at 3. Commerce's interpretation—that merchandise produced overseas from U.S.-origin materials will be U.S. merchandise only if the foreign production process does not constitute "substantial transformation"—is a reasonable application of 19 U.S.C. § 1673(1) because it comports with the plain meaning of the statute.

■ DuPont argues Commerce's determination is inconsistent with the general scheme and purpose of the antidumping statute. Pl.'s Brief at 22. Under the statutory scheme, Commerce compares United States price to the normal value of the subject merchandise to determine whether there is dumping. *See* 19 U.S.C. § 1677b. DuPont maintains that the clear intent of the statute is to exclude the merchandise at issue because there is no foreign "normal" value to compare to the United States price. DuPont claims that the U.S. market is DuPont's home market. DuPont argues there is no sale of PVA outside the United States before importation, and therefore, the Department's antidumping investigation will compare DuPont's prices in the same market to each other, demonstrating that in the absence of a foreign "normal" value an antidumping investigation cannot reasonably proceed. Pl.'s Brief at 20. The Court does not agree.

Plaintiff's argument is flawed because in calculating normal value pursuant to section

1677b, the "home market" is the "exporting country."[4] 19 U.S.C. § 1677b(a)(1)(B). The tolled PVA is exported from Taiwan to the United States. Therefore, for purposes of calculating normal value under the statute, the home market is Taiwan, not the United States. Def.'s Mem. Opp'n to Pl.'s Mot. J. Agency R. at 37.

■■■ The antidumping statute reflects Congress' recognition that country of origin determinations are vital to preserve the integrity of existing antidumping orders from potential circumvention through third country assembly, U.S. assembly, and transshipment of subject merchandise through intermediate countries. See 19 U.S.C. §§ 1677j, 1677b(a)(3). Because antidumping orders apply to merchandise from particular countries, not individual producers, determining the country where the unfairly traded merchandise is produced or manufactured is fundamental to the proper administration and enforcement of the antidumping statute. See 19 U.S.C. § 1673; see also §§ 1677j, 1677b(a)(3). The "substantial transformation" rule provides a means for Commerce to carry out its country of origin examination and properly guards against circumvention of existing antidumping orders.

DuPont also argues that Commerce's substantial transformation rule is inconsistent with the Department's own regulations on "tolling":

> [Commerce] will not consider a toller or sub-contractor to be a manufacturer or producer where the toller or subcontractor does not acquire ownership, and does not control the relevant sale, of the subject merchandise or foreign like product.

62 Fed.Reg. 27,296, 27,411 (May 19, 1997)(final rule), codified at 19 C.F.R. § 351.401(h)(1997). This regulation, however, addresses the relationship of the parties in the manufacturing process, not the nationality of the merchandise itself. The substantial transformation test determines whether the "toller"/processor performs functions of such significance as to change the national character of the merchandise. This test is not one that bears on the relationship of the parties in the manufacturing process. Upon its face, the regulation does not preclude a U.S. producer from becoming a respondent in an antidumping proceeding when merchandise it owns is produced or further processed in a foreign country. DuPont's interpretation of the regulation is too broad as it would allow an owner of merchandise, e.g., raw materials, to circumvent the antidumping statute simply by categorizing its foreign processor as a "toller."

DuPont also argues that Commerce's determination is inconsistent with *Brass Sheet and Strip From Canada*, 58 Fed.Reg. 33,610 (Dep't Commerce 1993)(final det.). Pl.'s Brief at 34. The Court does not agree. In *Brass Sheet*, the merchandise toll-produced in Canada was included in the scope of the antidumping duty order. For the toll-produced merchandise, Commerce treated metal value as a separate item. Commerce calculated a margin that did not include the value of the U.S.-origin metal from which the brass sheet and strip was produced. *Id.* at 33,611–612. Here, DuPont withdrew its request that Commerce calculate a rate that did not include the value of the U.S.-origin materials. *See* 61 Fed.Reg. at 14,070. Thus, this case is distinguishable from *Brass Sheet*.

Accordingly, the Court upholds Commerce's use of the "substantial transformation" rule to define "foreign" merchandise as in accordance with law.

■■■ Commerce's determination, however, also must be supported by substantial evidence in the record. Applying the "substantial transformation" standard, Commerce "examined whether the degree of processing or manufacturing resulted in a new and different article" and concluded that "VAM must undergo a substantial transformation" in Taiwan to be converted into PVA. Scope Determination at 3. However, it is not clear to the Court what evidence formed the basis

---

4. The factual assumptions upon which Plaintiff relies are also incorrect. This is demonstrated by Commerce's preliminary results. *Polyvinyl Alcohol From Taiwan*, 63 Fed.Reg. 6,526, 6,528 (Dep't Commerce 1998)(prel. results admin. rev.). In the absence of contemporaneous home-market or third-country sales Commerce relied on constructed value to determine normal value. *Id.* at 6,530.

of Commerce's determination. "[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943). Therefore, the Court is remanding this issue for reconsideration. Commerce appears to have relied upon a confidential document describing Chang Chun's production process. *See* P.R. Doc. No. 8 (Chang Chun's Consent to Placement of Certain Proprietary Information from Antidumping Investigation on Record of Instant Proceeding, March 19, 1997). Upon remand, Commerce at minimum [5] should explain to the Court the evidence it is relying on to make its substantial transformation determination.[6]

### Conclusion

In accordance with the foregoing, it is hereby ORDERED that Commerce's determination regarding the scope of the Order is remanded. Commerce shall complete its remand determination by **Monday, June 15, 1998.** Any comments or responses are due by **Monday, July 13, 1998.** Any rebuttal comments are due by **Tuesday, July 28, 1998.**

It is further ORDERED that Plaintiff's motions are denied in all other respects.

---

5. Commerce has the discretion to re-open the record, *Industrial Quimica Del Nalon, S.A. v. United States*, 16 CIT 84, 85 (1992), in order to satisfy the Court's remand order. Commerce may also choose to conduct a formal scope inquiry pursuant to 19 C.F.R. § 353.29.

6. On December 8, 1997, Plaintiff filed a motion to strike certain portions of Defendant's reply brief and Defendant–Intervenor's response brief. Plaintiff argues Defendant and Defendant–Intervenor relied on factual material outside of the

administrative record. Pl.'s Mot. Strike Portions Def.'s Reply Brief & Def.-Intervenor's Response Brief at 2. Specifically, Plaintiff claims Defendant and Defendant–Intervenor relied on evidence outside of the record concerning the PVA production process. *Id.* Because the Court is remanding for Commerce to explain the evidence that it is relying on to make its substantial transformation determination, Plaintiff's motion is denied as moot.